Harry LUTHER, Appellee,

v.

Billy COMPTON, Warden; Ben Linde-
mood, Warden; Donnie Noles, War-
den; Donna Klutts, P.A.; Edna Free-
men, Health Administrator; Jane
Vernon, Director of Nurses; Pat
Burch, L.P.N.; Britton Morton,
L.P.N.; Jimmy Childress, Vo–Tech
Shop Instructor; Kenny Foster, Vo–
Tech Security Officer; and Roy
O'Steen, Safety Inspector, Appellants.

Supreme Court of Tennessee,
at Jackson.

Nov. 22, 1999.

W. Lewis Jenkins, Jr., Dyersburg, TN, for Appellee.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, Patricia C. Kussman, Assistant Attorney General, Nashville, TN, for Appellant.

## OPINION

BIRCH, Justice.

### I

We granted review in this case to determine if the plaintiff should be allowed to conduct additional discovery on his claim that the defendants[1] were "deliberate[ly] indifferen[t]" to his serious medical needs. In addition, we will consider whether the plaintiff's 42 U.S.C. § 1983 and negligence claims were properly dismissed pursuant to the defendants' motion for summary judgment. Because we conclude that the plaintiff's assertions of deliberate indifference do not state an independent cause of action but are, instead, part of his 42 U.S.C. § 1983 claim, we reverse only that portion of the intermediate court's decision permitting additional discovery. Further, we reinstate the trial court's decision granting the defendants' motion for summary judgment on the plaintiff's negligence claim.

### II

Harry Luther, the plaintiff, is incarcerated at the Lake County Regional Correc-

---

1. Harold Butler, M.D., was named as a defendant in the plaintiff's complaint but is represented by separate counsel and is not a party to this appeal. The defendants who appealed the Court of Appeals's decision in this case are: Billy Compton; Ben Lindemood; Donnie Noles; Donna Klutts, P.A.; Edna Freemen; Jane Vernon; Pat Burch, L.P.N; Britton Morton, L.P.N.; Jimmy Childress; Kenny Foster; and Roy O'Steen.

tional Facility (LCRCF) in Tiptonville, Tennessee.[2] On November 12, 1996, the plaintiff was working at the LCRCF Vocational–Technical shop when a table top[3] fell on his head, causing a two-inch laceration to his scalp. Kenny Foster, a correctional facility employee working in the Vocational–Technical shop on the day the plaintiff was injured, testified that the table top had been improperly stored despite his repeated admonitions to inmates that table tops should not be stored in that location.

Following the incident, the plaintiff was escorted to the prison's medical clinic where nurses applied pressure bandages to stop his bleeding. At the clinic, the plaintiff complained of neck and spinal pain, dizziness, and blurred vision. He was observed for eight hours before being released.

The day after the incident, the plaintiff returned to the clinic. A nurse-practitioner gave him Tylenol and ordered a series of x-rays on his skull and spine. Although the x-rays revealed no fractures, they did show degenerative changes in his spine.

The plaintiff returned to the clinic several times in the days following the incident. Several neurological assessments were completed during these visits; Donna Klutts, P.A., testified that each assessment was within normal limits. Nevertheless, on November 20, 1996, a clinic nurse-practitioner prescribed Paraflex and Naprosyn[4] for the plaintiff. On November 25, 1996, Klutts saw the plaintiff again. At this meeting, Klutts referred the plaintiff to Harold Butler, M.D., for further evaluation. During the two weeks following the incident, the plaintiff returned to the clinic at least five times, complaining on each visit of headaches and neck pain.

The plaintiff met with Butler for the first time on December 2, 1996. During this visit, Butler diagnosed the plaintiff's condition as degenerative arthritis of the cervical spine. After making this diagnosis, Butler prescribed muscle relaxants and anti-inflammatory medication for the plaintiff. In addition, Butler ordered that the plaintiff be exempted from work. Despite this treatment, the plaintiff continued to complain of headaches and neck pain. The plaintiff returned to the clinic several times in early December 1996; on each visit, he was assessed by clinic nurses. Each assessment was recorded as normal.

The plaintiff met with Butler for the second time on December 12, 1996, to have his prescriptions refilled. After this meeting, the plaintiff did not see Butler or return to the clinic again until January 16, 1997, when he met with Butler for a third time. During this visit, Butler diagnosed the plaintiff as suffering from degenerative disease of the cervical spine. At the same time, Butler referred the plaintiff to the Lois Deberry Special Needs Medical Facility (Special Needs Facility) in Nashville, Tennessee, in order to obtain a second opinion about the plaintiff's condition.

The plaintiff's first appointment at the Special Needs Facility was scheduled for February 24, 1997; however, the Special Needs Facility canceled this appointment and rescheduled it for March 13, 1997. Between the plaintiff's third visit with Butler on January 16, 1997, and the time that he was transported to the Special Needs Facility on March 11, 1997, the plaintiff visited the clinic at least six times. The plaintiff's chief complaint during each of these visits was that he was suffering from headaches and back pain.

The plaintiff arrived at the Special Needs Facility on March 11, 1997. After

2. Because this appeal involves our review of a motion for summary judgment, no findings of facts as to which there is a genuine issue have or will be made. The facts relevant to our review of this case appear to be as they are summarized hereafter.

3. In his complaint, the plaintiff stated that this table top weighed between fifty and seventy pounds.

4. Paraflex is a muscle relaxant, and Naprosyn is an anti-inflammatory drug.

arriving, additional x-rays of the plaintiff's head and spine were taken. On March 13, 1997, Lance Weaver, M.D., made the same diagnosis of the plaintiff's condition as had Butler: degenerative disease of the cervical spine. Weaver recommended that the plaintiff receive a Magnetic Reasonance Imaging (MRI) exam, but on March 17, 1997, the plaintiff was returned to LCRCF without the MRI exam having been administered.

On April 9, 1997, the plaintiff was again transported from LCRCF to the Special Needs Facility. On this second visit to the Special Needs Facility, the MRI was performed. Additionally, Weaver re-examined the plaintiff. In his affidavit, the plaintiff stated that it was during this visit that Weaver informed him that he might need surgery to correct cervical problems and alleviate head and neck pain. Weaver also told the plaintiff that he should receive physical therapy and issued the plaintiff a neck collar.

The plaintiff alleges that since his return to LCRCF on April 15, 1997, he has not had surgery, physical therapy, or any additional treatment for his head and neck pain. Between the date that the incident occurred on November 12, 1996, and the date that the plaintiff filed his complaint on May 5, 1997, the plaintiff visited the prison clinic approximately 30 times. During this same time period, Butler examined the plaintiff three times, and Weaver examined him twice.

### III

On May 5, 1997, the plaintiff filed a complaint against numerous prison officials in their personal capacities. In his complaint, the plaintiff claimed that the defendants violated his constitutional rights under 42 U.S.C. § 1983. Additionally, the plaintiff claimed that the defendants were negligent in storing the table top and in

treating his injuries following the November 12, 1996, incident.

The trial court held that the plaintiff failed to present a genuine issue of material fact as to his constitutional claims against the defendants. Additionally, the trial court held that the defendants were immune from the plaintiff's tort claims pursuant to Tenn.Code Ann. § 9–8–307(h),[5] since the plaintiff's claims were that the defendants were negligent and the defendants were acting within the course and scope of their employment. The trial court then granted the defendants' motion for summary judgment on the plaintiff's 42 U.S.C. § 1983 and negligence claims.

The Court of Appeals affirmed the trial court's decision granting summary judgment to the defendants on the plaintiff's 42 U.S.C. § 1983 constitutional claim. The Court of Appeals also found that "Tenn. Code Ann. § 9–8–307(h) provides [the defendants] with immunity with regard to [any act of] negligence that [might have] occurred within the scope of their employment." However, the Court of Appeals remanded the case to the trial court to allow the plaintiff to conduct additional discovery on his assertion that the defendants had been "deliberate[ly] indifferen[t]" to his medical needs.

### IV

The standards governing an appellate court's review of a trial court's decision to grant or deny a motion for summary judgment are well settled. *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995). "Since our inquiry involves purely a question of law, no presumption of correctness attaches to the trial court's judgment, and we need only review the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met." *Id.*

---

**5.** Tenn.Code Ann. § 9–8–307(h) provides that "[s]tate officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain." Tenn.Code Ann. § 9–8–307(h)(Supp.1998).

■ A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03; *Byrd v. Hall,* 847 S.W.2d 208, 210–11 (Tenn.1993). A fact is material if it "must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd,* 847 S.W.2d at 211. To determine whether a genuine issue of material fact exists, "the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id.* at 211. If a court determines either that a dispute exists as to any material fact or that any doubt exists as to the conclusions to be drawn from the facts, the movant's motion for summary judgment must be denied. *Id.* Likewise, where the record shows that there is no genuine issue as to any material fact, judgment for the moving party "shall be rendered forthwith." Tenn. R. Civ. P. 56.04.

V

The Eighth Amendment to the United States Constitution prohibits the imposition of "cruel and unusual punishments." *Gregg v. Georgia,* 428 U.S. 153, 169–73, 96 S.Ct. 2909, 2922–25, 49 L.Ed.2d 859, 871–75 (1976). This constitutional prohibition against the imposition of cruel and unusual punishments has been interpreted by the United States Supreme Court to mean that the government has an obligation to provide medical care for those that it punishes with incarceration. *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251, 259 (1976). If the government fails to fulfill this obligation, the prisoner's constitutional rights may be violated.

■ Indeed, the United States Supreme Court has noted that when prison authorities act with "deliberate indifference to [the] serious medical needs" of a prisoner, such action constitutes a violation of that prisoner's Eighth Amendment rights. *Estelle,* 429 U.S. at 104–105, 97 S.Ct. at 291. Additionally, such action creates a cause of action under 42 U.S.C. § 1983. *Id.* For example, a prisoner's constitutional rights are violated under the "deliberate indifference" standard if prison guards intentionally deny or delay access to medical care or intentionally interfere with the prisoner's treatment once treatment has been prescribed. *Id.*

■ Obviously, not every prisoner's complaint of inadequate medical care will rise to the level of a cognizable constitutional claim. *Estelle* makes clear that a prison doctor's "inadvertent failure to provide adequate medical care" does not rise to the level of a constitutional violation. *Estelle,* 429 U.S. at 105, 97 S.Ct. at 292. Additionally, "a [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292.

Although *Estelle* held that deliberate indifference to a prisoner's serious medical needs must be proven as a prerequisite to establishing a violation of the Eighth Amendment under 42 U.S.C. § 1983, it was a subsequent United States Supreme Court decision that defined the term "deliberate indifference." *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 1977–78, 128 L.Ed.2d 811, 824 (1994). Although *Farmer* was not a prisoner medical needs case, it clarified that in order for a prisoner to meet the "deliberate indifference" standard outlined in *Estelle,* the prisoner must first establish a subjective element of his claim (the *Farmer* subjective test). *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.

■ The *Farmer* subjective test has two prongs. *Id.* First, *Farmer* requires the

prisoner to prove that a prison official is aware of facts from which an inference could be drawn that a substantial risk of serious harm to the prisoner exists. *Id.* Second, the prisoner must prove that the individual prison official personally drew such an inference from those facts. *See id.* If either part of the *Farmer* subjective test is unmet, the prisoner will not be able to establish "deliberate indifference," and accordingly will be unable to establish a constitutional violation under *Estelle. See id.*

■ In the case before us, it is clear that there is no "genuine issue of material fact" regarding the defendants' alleged "deliberate indifference" to the plaintiff's serious medical needs. *See Byrd v. Hall,* 847 S.W.2d at 210–11; *Estelle,* 429 U.S. at 104, 97 S.Ct. at 291. A review of the record indicates that the plaintiff was seen, treated, and examined approximately 30 times by LCRCF clinic medical personnel between the time that the incident occurred on November 12, 1996, and the time that he filed his complaint on May 5, 1997. During this same time period, the plaintiff was examined five times by two different doctors. Two different sets of skull and spine x-rays were taken, and the plaintiff visited the Special Needs Facility twice. In addition, we note that one defendant, Donna Klutts, was instrumental in ensuring that the plaintiff received additional medical attention beyond that shown him by clinic nurses. Indeed, it was Klutts' decision to refer the plaintiff to Butler for additional treatment and diagnosis of his head and neck pain.

Applying *Farmer's* subjective test to the plaintiff's assertions of deliberate indifference, we note that the plaintiff's complaint and affidavit assert no facts from which a logical conclusion can be drawn that the defendants were aware of any facts that would support an inference that a "sub-

stantial risk of serious harm" to the plaintiff existed. *See Farmer v. Brennan,* 511 U.S. at 837, 114 S.Ct. at 1979. A plaintiff must satisfy both prongs of *Farmer's* subjective test as a prerequisite to establishing a 42 U.S.C. § 1983 constitutional violation under *Estelle;* in the case now before us, the plaintiff has failed to establish either. *See id.; Estelle,* 429 U.S. at 104–105, 97 S.Ct. at 291.

In this case, the plaintiff has simply not alleged facts that would establish the subjective element of his deliberate indifference claim. As such, he has not created a "genuine issue of material fact" as to his claims of deliberate indifference. Thus, the defendants are entitled to judgment on the plaintiff's constitutional claims as a matter of law.

## VI

In Tennessee, "[s]tate officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain." Tenn. Code Ann. § 9–8–307(h)(Supp.1998).

■ All of the defendants before this Court are state employees. During all times relevant to this case, each defendant was acting within the scope of his or her employment with the state; indeed, the plaintiff does not assert otherwise.[6] Though the plaintiff's complaint alleges two different counts of negligence—the first for the improperly stored table top and the second for the defendants' negligence in treating his head and back injuries following the incident—inquiry into either of these allegations is unnecessary. Assuming, arguendo, that the defendants were negligent in either of these instances (a finding we expressly reject), the defen-

---

6. The plaintiff's complaint and affidavits do not allege that the defendants' actions were "willful, malicious, or criminal." *See* Tenn. Code Ann. § 9–8–307(h)(Supp.1998). Addi-

tionally, the plaintiff has not offered facts in any pleading that would logically support such a conclusion.

dants would remain immune from suit for any act of negligence committed within the scope of their employment. Tenn.Code Ann. § 9–8–307(h)(Supp.1998). Accordingly, summary judgment on the defendants' negligence claims is appropriate.

 The Court of Appeals correctly affirmed the trial court's decision granting the defendants' motion for summary judgment on the plaintiff's 42 U.S.C. § 1983 constitutional claim. Additionally, the Court of Appeals correctly noted that Tenn.Code Ann. § 9–8–307(h) provides the defendants with immunity with regard to any negligence that might have occurred within the scope of their employment. However, the Court of Appeals erred when it concluded that the plaintiff should be allowed to conduct additional discovery in order to determine whether the defendants were "deliberate[ly] indifferen[t]" to his medical needs.

It appears that the Court of Appeals construed language in the plaintiff's complaint—that the defendants were "deliberate[ly] indifferen[t]" to the plaintiff's serious medical needs—to be a claim *independent of* the plaintiff's negligence and 42 U.S.C. § 1983 claims against the defendants. We cannot agree with the Court of Appeals's interpretation of the term "deliberate indifference." As implied by the discussion of *Estelle* and *Farmer* above, the "deliberate indifference" language found in the plaintiff's complaint should be read in conjunction with *Estelle* and *Farmer* and should be considered an allegation of an element essential to the plaintiff's 42 U.S.C. § 1983 claim. Thus, since the Court of Appeals correctly upheld the dismissal of the plaintiff's 42 U.S.C. § 1983 claim, it would be inconsistent with that holding to allow further discovery in this case.

### VII

For the foregoing reasons, we affirm the Court of Appeals's decision upholding the grant of summary judgment to the defendants on the plaintiff's 42 U.S.C. § 1983

claim. Consistent with this holding, we reverse that portion of the Court of Appeals's decision permitting the plaintiff to conduct additional discovery on his allegation that the defendants were "deliberate[ly] indifferen[t]" to his serious medical needs. Additionally, we reinstate the trial court's decision granting the defendants' summary judgment motion on the plaintiff's negligence claims.

Costs of this appeal are taxed to the plaintiff.

The Court takes this opportunity to express its profound gratitude to W. Lewis Jenkins, Jr., Esquire, of the Memphis Bar, who has represented the plaintiff in this case before us without fee.

ANDERSON, C.J., DROWOTA, HOLDER, BARKER, JJ., concur.