IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 13, 2002 Session

## JAMES L. THOMPSON v.
## KNOXVILLE TEACHERS FEDERAL CREDIT UNION, ET AL.

Appeal from the Chancery Court for Knox County
No. 01-151257-2     Daryl R. Fansler, Chancellor

FILED DECEMBER 10, 2002

No. E2002-00780-COA-R3-CV

James L. Thompson ("Plaintiff") was the principal stockholder, director, and officer of People Personnel Industrial Corporation. Plaintiff began kiting checks when the corporation started having financial difficulties. Plaintiff's actions resulted in a substantial monetary loss to Knoxville Teachers Federal Credit Union ("Credit Union"). After both the corporation and Plaintiff filed for bankruptcy, the parties entered into an agreement whereby the Credit Union agreed not to pursue or assist any other party in pursuing a cause of action against Plaintiff based on the check kiting. Thereafter, Plaintiff was prosecuted in federal court. The Credit Union supplied information to the United States Government pertaining to the amount of its financial losses. After Plaintiff pled guilty in federal court to defrauding the Credit Union, he was ordered to serve a small amount of time in prison and pay restitution of $74,417.29 to the Credit Union. Plaintiff brought this lawsuit claiming the Credit Union pursued the order of restitution in the criminal proceeding and thereby violated the terms of the settlement agreement. The Trial Court granted summary judgment to Defendants, and Plaintiff appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
### Chancery Court Affirmed; Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

C. Mark Troutman, LaFollette, Tennessee, for the Appellant James L. Thompson.

Sam H. Poteet, Jr., Fred C. Statum, III, and Jeffrey S. Price, Nashville, Tennessee, for the Appellees Knoxville Teachers Federal Credit Union and Cumis Insurance Society, Inc.

# OPINION

## Background

Plaintiff sued Defendants in June of 2001 seeking damages for an alleged breach of a settlement agreement. Plaintiff was the principal shareholder, director, and officer of People Personnel Industrial Corporation. After the corporation began experiencing financial difficulties, Plaintiff admittedly began "kiting checks." Plaintiff's check kiting resulted in the Credit Union suffering financial losses which were insured through Defendant Cumis Insurance Society, Inc. ("Cumis"). To compensate the Credit Union for its losses, Plaintiff executed a Promissory Note on behalf of Peoples Personnel Inc., and Plaintiff and his wife personally guaranteed the debt. People Personnel Inc., is a separate corporation from People Personnel Industrial Corporation, although Plaintiff was the principal shareholder, officer, and director of both corporations. The promissory note was drafted incorrectly and should have been executed on behalf of People Personnel Industrial Corporation, not People Personnel, Inc. Plaintiff claims he was unaware of the mistake. After executing the promissory note, Plaintiff claims he paid approximately $30,000 towards the debt.

According to the complaint, in March of 1999, Plaintiff realized he could not salvage People Personnel Industrial Corporation and the corporation filed for bankruptcy. Due to the mistake in the drafting of the promissory note, the Credit Union's lien against the corporation's assets was lost. Since Plaintiff and his wife had personally guaranteed the debt, he and his wife filed for bankruptcy. The Credit Union filed an adversary proceeding in Bankruptcy Court seeking to deny the discharge of the remaining debt it was owed by Plaintiff and his wife. Plaintiff denied there were any grounds to avoid the discharge of this debt and requested an award of attorney fees. The parties then entered into a Joint Stipulation of Dismissal of Complaint to Determine Dischargeability of Debt. In relevant part, this Joint Stipulation provides:

> 5. The [Credit Union and Cumis] have agreed to dismiss the above-styled Complaint with prejudice and to not pursue or to allow any party to pursue on their behalf any cause of action they have or may have against the Defendants [James or Barbara Thompson], either jointly or severally, or any related party for actions of the Defendants which are the subject of the Complaint.

> 6. In exchange for dismissal with prejudice of the above-styled Complaint, the Defendants have agreed not to pursue or to allow any party to pursue on their behalf, any cause of action they have or may have against the Plaintiffs either jointly or severally, whether known or unknown, and including but not limited to, any claims related to the Plaintiff's commencement and pursuit of the Complaint to Determine Dischargeability of Debt.

After this Joint Stipulation was entered into, Plaintiff was prosecuted for check kiting in the United States District Court. According to Plaintiff, the Credit Union and Cumis actively participated in the criminal proceeding "cause of action for restitution" in violation of the terms of the Joint Stipulation. Plaintiff claims he is entitled to damages of $74,417.29, which is the amount of restitution he was ordered to make when sentenced in the United States District Court for his criminal actions.

In their Answer, the Credit Union and Cumis admitted Plaintiff had been kiting checks and Plaintiff signed the promissory note. Defendants averred the remaining balance owed by Plaintiff was $74,417.29.[1] Defendants also admitted entering into the Joint Stipulation in the Bankruptcy Court and that Plaintiff was ordered by the United States District Court to pay restitution in the amount of $74,417.29 as part of Plaintiff's sentence for his criminal actions. Defendants denied, however, that they had breached the terms of the Joint Stipulation or were otherwise liable to Plaintiff.

Defendants moved for summary judgment, claiming Plaintiff had no evidence to support his "allegation that the Defendants breached the Settlement Agreement between the parties. In addition, the Plaintiff has not incurred any damages as a result of the alleged breach." In support of the motion, Defendants filed the affidavit of Myra Melton ("Melton"), a probation officer with the United States Probation Office. Melton was assigned to Plaintiff's criminal action and prepared the sentencing report and recommendations to the District Court. According to Melton, Plaintiff pled guilty to devising a scheme to defraud a credit union and was sentenced to five months in prison, followed by five years of probation. Plaintiff also was ordered to pay restitution in the amount of $74,417.29. Pursuant to the sentencing guidelines, Plaintiff's conduct warranted ten to sixteen months of imprisonment, three to five years of supervised release, and a fine of $3,000 to $1,000,000. Melton went on to state as follows:

> 8.  I prepared and presented the information to the court which the court used in determining the proper punishment for Mr. Thompson.
>
> 9.  Neither Knoxville Teachers Federal Credit Union nor Cumis Insurance Society pursued a criminal judgment or Order of Restitution and neither Knoxville Teachers Federal Credit Union nor Cumis Insurance Society advocated to the court the entry of the criminal Order of Restitution.

---

[1] Cumis paid the Credit Union $73,417.29 through its insurance policy. The Credit Union was owed the remaining $1,000.

10.	Based upon my experience, the court will not waive or excuse a criminal defendant from his obligation to pay restitution to the victim of the crime.[2]

11.	Neither Knoxville Teachers Federal Credit Union nor Cumis Insurance Society had or has the authority or ability to prevent the entry of the Order of Restitution or to release the Order of Restitution. The Order of Restitution is part of Mr. Thompson's criminal sentence and cannot be modified by an agreement of private parties.

Plaintiff responded to the motion for summary judgment. Plaintiff asserted Defendants actively pursued restitution claims against Plaintiff instead of advising the United States Government that any claims between the parties had been resolved. Plaintiff "viewed the settlement agreement as a compromise of any claims for restitution and so advised the government." Plaintiff also stated he reviewed, during the course of the criminal proceedings, information provided by Defendants to the United States Government relating to the check kiting scheme, the amount of the checks involved, and the attorney fees incurred by Defendants. Plaintiff also stated counsel for the Credit Union was present at the sentencing hearing and "*appeared* to be prepared to file the documents in connection with the pursuit of restitution," but these documents never were filed. (emphasis added).

The Trial Court granted Defendants' motion for summary judgment, although the exact reasons for doing so are not stated in the Order. Plaintiff appeals the grant of summary judgment to Defendants. On appeal, the issue as stated by Defendants is: "Whether the Chancellor properly held that, as a matter of law, the separate and independent action of the United States District Court in sentencing Plaintiff to make restitution as part of Plaintiff's punishment upon criminal conviction for defrauding a federal credit union did not constitute a breach of a civil settlement agreement between Plaintiff and Defendants."[3]

## **Discussion**

The standard for review of a motion for summary judgment is set forth in *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83 (Tenn. 2000):

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness

---

[2]In the Presentence Investigation Report filed in the criminal proceeding, Melton pointed out that while the applicable statute allows an order of restitution, in accordance with § 5E1.1 of the USSG, "restitution shall be ordered."

[3] Plaintiff's brief does not contain a statement of the issues presented for review as required by Tenn. R. App. P. 27(a)(4).

attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples*, 15 S.W.3d at 88-89. A fact is "material" for summary judgment purposes, if it "must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999)(quoting *Byrd v. Hall*, 847 S.W.2d at 211).

Defendants argue the criminal action in which restitution was ordered is not a "cause of action" that a private party can pursue and, therefore, the undisputed material facts show they neither pursued any cause of action nor allowed the United States Government to do so on their behalf. Thus, Defendants argue there was no breach of the Joint Stipulation which prohibited their pursuing or allowing any party to pursue a cause of action against Plaintiff. Defendants rely on *K.B. v. State Farm Fire and Casualty Co.*, 189 Ariz. 263, 267, 941 P.2d 1288, 1292 (Ariz. App. 1997)("A victim is not a party to the criminal trial and he has no opportunity to litigate the issues.") and *State v. Stirba*, 972 P.2d 918, 921 (Utah App. 1998)("The State's right to pursue criminal restitution cannot be equated with the victim's right to pursue civil damages."). Plaintiff essentially argues Defendants breached the Joint Stipulation by providing the United States Government information regarding the amount of its losses which were incurred as a result of Plaintiff's criminal activity and "appearing" to be ready to file documents.

According to Melton's affidavit, Defendants neither pursued a criminal judgment or order of restitution, nor advocated for same. Melton further stated the federal court, in her experience, will not excuse a criminal defendant from his or her obligation to pay restitution. More importantly, however, is Melton's testimony that Defendants neither have the authority to prevent an order of restitution from being entered, nor can they release Plaintiff from this obligation which he has to the federal court. Plaintiff did not rebut any of these material facts established by Melton. While Defendants may have provided information to the federal court with regard to the amount of its losses, the undisputed material facts show that whether or not Plaintiff was ordered to pay restitution clearly was out of Defendants' hands, and they could not impact that result. As such, Defendants did not "pursue" a cause of action against Plaintiff for restitution, even assuming there is a cause of action for restitution. Likewise, Defendants did not "allow" the United States Government to pursue a cause of action against Plaintiff since Defendants neither could allow nor disallow the restitution aspect of the federal court's sentence imposed upon Plaintiff.

We conclude the undisputed material facts show neither Defendant violated the terms of the Joint Stipulation. Accordingly, the Trial Court properly granted Defendants summary judgment. Because we conclude there was no breach of the Joint Stipulation, we pretermit any remaining issues.

**Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion. The costs on appeal are assessed against the Appellant James L. Thompson, and his surety.

_____
D. MICHAEL SWINEY, JUDGE