

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00414-CR

ROBERT CHARLES HINES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 47th District Court
Potter County, Texas
Trial Court No. 66,474-A, Honorable Dan L. Schaap, Presiding

September 26, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, Robert Charles Hines, appeals his conviction for burglary of a habitation and ninety-nine year sentence. He contends that 1) the trial court erred in admitting evidence of an extraneous offense, 2) the trial court erred in failing to give a limiting instruction at the time the evidence was admitted, and 3) his counsel was ineffective in failing to request a limiting instruction at the time the evidence was admitted. We reverse.

*Background*

The dispute involved the admission of evidence disclosing (during the guilt/innocence phase of the trial) that appellant had been in prison for some other offense. The evidence consisted of appellant's parole officer testifying that he was assigned to appellant around August 1, 2012, and that such assignments were normally made within 24 hours after the parolee was released from prison. Furthermore, the State offered the evidence to purportedly rebut or clarify testimony of appellant's brother regarding the times at which appellant may have visited his home. The latter happened to be the abode that appellant was accused of burglarizing some five months later in December of 2012. By that time, two individuals other than appellant's brother were living there. And, they too acknowledged having invited appellant over to the house on various occasions before the burglary and while he lived in a separate house next to them.

It happened that someone burglarized the house by breaking through a window, and appellant's fingerprints were found on the broken window glass. The burglar not only entered the house but also ate some food and drank some alcoholic beverages found therein before leaving with various types of property. Left, however, was a cushion that was once in the abode that appellant inhabited before being evicted.

Appellant attempted to explain the presence of his fingerprints on the broken glass by suggesting that they had been left while he was there on prior occasions per invitation by the prior and present tenants. The explanation was unconvincing, given the jury's verdict of guilty.

*Authority*

Appellant invoked Texas Rules of Evidence 403 and 404(b) when objecting to the admission of the parole officer's testimony. We assume *arguendo* that the evidence in question had some purpose other than to insinuate that appellant had a bad character. *See* TEX. R. EVID. 404(b) (stating that evidence of other crimes, wrongs, or acts is inadmissible to prove character in order to show conformity therewith but may be admissible for other purposes). Again, the State argued that the evidence revealing appellant had been previously imprisoned was admissible to refute a defensive theory or correct a false impression. Yet, the evidence did little to further either purpose.

Appellant's brother vacillated about whether appellant had been in the house prior to August of 2012. Eventually, though, he was asked for a date on which he was sure appellant was present in the house. The witness replied August 13, 2012. When asked if he "remember[ed] whether or not . . . [appellant] ever came to visit you at . . . [the] house before" then, he answered "No, ma'am." Such testimony hardly illustrates a false impression concerning whether appellant was there in June or July of 2012. Admitting that August 13th was the first date on which he could remember appellant being there cannot reasonably be interpreted as suggesting he was at the house in June or July. So, the parole officer's testimony was not needed to refute a false impression.

Nor can it be said that the parole officer's testimony was needed to impeach the witness' credibility to the extent the witness testified that appellant visited in June or July. Again, the witness concluded that he could not remember appellant visiting during those months. Simply put, there was nothing to impeach.

3

And, even if the witness' testimony could be interpreted as somehow insinuating that appellant did visit during those two summer months, the parole officer spoke about what usually occurs *viz* the time between a prisoner's release and his assignment to a parole officer. However, the parole officer later admitted to having no actual recollection of appellant's situation or whether it fell within the parameters of what "usually happens." So, it did not foreclose the possibility that appellant could have visited in July, if not June.

As for rebutting appellant's defensive theory, attempting to prove that appellant could not have visited in June or July falls quite short of proving he did not visit the home with permission of the tenant during the five-month span between August 1st and the date of the burglary. Indeed, it is undisputed that he so visited the home. Consequently, the State's disclosure of appellant having been imprisoned before August 1st did little to rebut the defensive theory that his fingerprints were left while lawfully within the home in August and the months thereafter.

We next observe that authority long ago characterized evidence of prior criminal conduct as inherently prejudicial. *Chavez v. State*, 866 S.W.2d 62, 65 (Tex. App.—Amarillo 1993, pet. ref'd); *accord Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994) (wherein the Court of Criminal Appeals said that it has "consistently acknowledged that the introduction of extraneous offenses to the jury is inherently 'prejudicial'"). It was so recognized because of its tendency to play favorably on the jury's natural inclination to infer guilt of the charged offense from the extraneous offenses. *Abdnor v. State*, 871 S.W.2d at 738. And, rather than attempt to try and ameliorate the prejudice inherent in the evidence via an immediate limiting instruction,

4

the trial court gave no such limiting instruction.  Rather, it waited until charging the jury at the close of evidence to undertake the effort.  This would not be problematic had the Court of Criminal Appeals not held that limiting instructions are to be given when the prejudicial evidence is received.  *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007).  Delaying them leaves open the possibility that the jurors will consider the evidence for an improper purpose.[1]

The record also illustrates that the parole officer was called as a rebuttal witness by the State after appellant had closed his defense.  Though his appearance on the witness stand was brief, the substance of his testimony concerned the disclosure of appellant's prior imprisonment and the supposed date of his release therefrom.  More importantly, he was the last witness to testify before deliberations upon appellant's alleged guilt.  One can hardly question that these circumstances had a substantial likelihood of focusing the jury's attention on the inherently prejudicial evidence imparted by the witness.

In assessing whether potentially relevant evidence should be excluded because its prejudicial nature substantially outweighs its probative value, we consider 1) the probative force of the evidence, 2) the need for the evidence, 3) the tendency of the evidence to suggest a decision on an improper basis, 4) the tendency of the evidence to confuse or distract the jury, 5) the tendency of the evidence to be given undue weight, and 6) the likelihood that the presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.  *Gigliobianco v. State*, 210

---

[1] When deciding to overrule appellant's objection to the parole officer's testimony, the trial court informed the parties that it would instruct the jurors on the limited use to which they could put the evidence.  Though appellant did not request an immediate instruction, the trial court nonetheless had done so *sua sponte* on previous occasions during trial.

S.W.3d 637, 641-42 (Tex. Crim. App. 2006); *Dekneef v. State*, 379 S.W.3d 423, 433 (Tex. App.—Amarillo 2012, pet. ref'd). The first four of those criteria clearly favored excluding the testimony at issue. Its probative value or relevance was marginal at best. The State had little need for it. Attributing to an accused prior criminal conduct is undoubtedly prejudicial and facilitates the jury's penchant to infer present guilt from prior criminal conduct. And, the prejudicial testimony came from the last witness called only for the purpose of soliciting that prejudicial testimony. As for the last indicia, not much time was spent on presenting the evidence, but the potentially unacceptable impact it had due to its timing is evident. Reasonable minds cannot disagree over the application of Rule 403 here; the prejudicial effect of disclosing that appellant had been previously imprisoned far outweighed any minimal probative value it may have had. The trial court abused its discretion in admitting it.

Having found error, we now assess its potential harm. Because the error was not of constitutional magnitude, we apply Texas Rule of Appellate Procedure 44.2(b). It requires us to ignore the error if it did not affect appellant's substantial rights. TEX. R. APP. P. 44.2(b). And, that determination is made by considering everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Easley v. State*, 424 S.W.3d 535, 542 (Tex. Crim. App. 2014).

Many of the factors mentioned in *Easley* were addressed either directly or indirectly when we analyzed whether error occurred, and none of those weighed in favor of finding the error harmless. To that, we add the State's allusion to appellant having been imprisoned during its closing argument. So, we can say that the inadmissible evidence was emphasized.

That the State had the opportunity to achieve the end it sought but without interjecting the prejudicial evidence is also depicted in the record. Appellant offered to stipulate that he could not have been in Amarillo or Potter County before August 1st. But, the State rejected the offer because it thought the stipulation invited misinterpretation. So, it insisted on offering prejudicial evidence on a topic of little importance.

On the other side of the scale, though, is the presence of evidence supporting conviction. Appellant's fingerprints were on numerous pieces of broken glass, and he had access at one time to the pillow removed from the neighboring house and found in the burglarized home. But, again, there is testimony that appellant not only visited the house but also "stayed there" at times when it was inhabited by his nephew. That he had complete access to the abode when visiting his nephew and brother was also established. So too was it suggested that appellant and another individual helped install plastic over the window in question when his brother lived in the house; that suggests that appellant lawfully could have been in the vicinity of the broken window to leave his fingerprints. Finally, an officer also established that fingerprints could remain on a surface for a long period of time. In short, proof of appellant's guilt, though adequate and present, was not overwhelming.

Given the totality of the record, the nature of the error, the inherent prejudice attached to the evidence admitted, the State's conscious decision to eschew an opportunity to avoid the error, the State's reiteration of the inadmissible evidence at closing, and the less than overwhelming evidence of appellant's guilt, we cannot but conclude that the error affected appellant's substantial rights. Thus, he suffered harm from it.

We sustain appellant's first issue, reverse the judgment, and remand the cause to the trial court.

Brian Quinn
Chief Justice

Do not publish