# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
August 16, 2016 Session

## STEPHNY DENISE YOUNG, ET AL. v. RICHARD JORDAN, MD, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-004445-11  Rhynette N. Hurd, Judge**

———————————————————

**No. W2015-02453-COA-R9-CV – Filed September 20, 2016**

———————————————————

This is a healthcare liability case.  Appellees, patient and her husband, filed suit against Appellants, physician and employer.  Appellants raised the affirmative defense of comparative fault based on the fact that Appellee/patient had been non-compliant with medical advice.  Appellees moved for partial summary judgment on the affirmative defense of comparative fault.  The trial court granted the motion, and Appellants appeal.  Because expert testimony adduced during discovery creates a dispute of material fact as to the question of Appellees' non-compliance with medical advice and the effect of such non-compliance on Appellees' injury, the grant of summary judgment was error.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court**
**Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and BRANDON O. GIBSON, JJ., joined.

Stephen W. Vescovo, Clarissa McClain Cissell, and Laura Lampton Deakins, Memphis, Tennessee, for the appellants, Richard Jordan and The Medical Group of Memphis, PLLC, d/b/a The Medical Group.

Donald A. Donati and Thomas J. Long, Memphis, Tennessee, for the appellees, Stephny Denise Young and Ben Young.

## OPINION

## I. Background

On or about March 22, 2011, Stephny Denise Young suffered a stroke. On September 29, 2011, Mrs. Young and her husband, Ben Young (together, "Appellees"), filed suit against Richard Jordan, M.D., internist, and Dr. Jordan's employer, The Medical Group of Memphis, PLLC d/b/a The Medical Group ("The Medical Group," and together with Dr. Jordan, "Appellants"). At the time of her stroke, Dr. Jordan was Mrs. Young's primary physician. In 2006, Mrs. Young underwent a heart valve replacement. Following the procedure, to prevent blood clots, Mrs. Young's cardiovascular clinic, the Stern Cardiovascular Clinic ("Stern Clinic"), prescribed Coumadin, an anticoagulation medication. It is undisputed that Mrs. Young's medication required regular testing of her blood coagulation levels, which are measured by an index called the International Normalized Ratio ("INR"). To maintain her INR levels at the recommended therapeutic range of 2.5 to 3.5, Mrs. Young was instructed to return to the Stern Clinic periodically for INR level testing.

On February 25, 2011, Mrs. Young reported to the Stern Clinic for INR level testing, which showed her INR level to be 2.2. Because her INR level was below the recommended therapeutic range, the Stern Clinic increased Mrs. Young's Coumadin prescription temporarily and advised her to return to the Stern Clinic to recheck her INR level in seven to ten days. Mrs. Young did not return to the Stern Clinic as advised. Rather, on March 2, 2011, she presented to Dr. Jordan with complaints of headaches and left-sided, facial numbness; both symptoms had persisted for several days. Dr. Jordan ordered a CT scan, which did not reveal any neurological cause for Mrs. Young's symptoms. Dr. Jordan did not check Mrs. Young's INR level and did not adjust her Coumadin dosage. Dr. Jordan testified that Mrs. Young told him that she was scheduled to return to the Stern Clinic for a follow-up INR level check. Dr. Jordan diagnosed Mrs. Young with migraines and prescribed Fioricet, a pain reliever. Between March 2, 2011 and March 19, 2011, Mrs. Young took nine doses of Fioricet as prescribed by Dr. Jordan. On March 21, 2011, Mrs. Young presented at St. Francis Hospital with symptoms of a stroke. Hospital staff measured Mrs. Young's INR level at 1.7. Mrs. Young was diagnosed with a hemorrhagic stroke from a blood clot that had formed on her synthetic heart valve. The stroke left Mrs. Young disabled with impairments affecting her vision, motor skills, memory, and mobility.

On September 29, 2011, Appellees filed suit against Appellants. In their amended complaint, which was filed on February 16, 2014, Appellees assert that Dr. Jordan breached the standard of care by prescribing Fioricet to Mrs. Young to treat her headaches. The complaint avers that Fioricet contains a pharmaceutical component, Butabarbital, that interferes with blood clotting. Having prescribed Fioricet, Appellees contend that Dr. Jordan had a duty to increase Mrs. Young's dose of Coumadin, in order to maintain her INR level within the recommended therapeutic range. Appellees allege that Dr. Jordan's failure to

modify the Coumadin dosage caused Mrs. Young's INR level to fall, which, in turn, caused a blood clot and her subsequent stroke. Specifically, the complaint avers that Dr. Jordan breached the standard of care by: (1) prescribing Fioricet instead of an alternate medication; (2) "fail[ing] to order an INR [level] for [Mrs.] Young on March 2, 2011;" (3) "fail[ing] to increase [Mrs.] Young's Coumadin level on March 2, 2011[,] as it was sub-therapeutic at that time and should have been increased;" (4) "fail[ing] to order timely follow up to [Mrs.] Young's Coumadin level on March 2, 2011, to ensure that the Coumadin level was in the therapeutic range;" and (5) "fail[ing] to properly monitor [Mrs.] Young's Coumadin level and adjust it accordingly to ensure that the INR [level] stayed within the therapeutic range of 2.5-3.5."

On October 27, 2014, Appellants filed an answer to the amended complaint, denying liability. As an affirmative defense, Appellants alleged comparative fault on the part of Mrs. Young. Specifically, Appellants averred "that reasonable and ordinary care was not employed by the plaintiff Stephny Young in complying with the advice and instructions of her health care providers[,] which resulted in harm to the plaintiff."

On June 1, 2015, Appellees filed a motion for partial summary judgment, arguing that Appellants:

> have completely failed to offer any facts and competent opinions that any act of [Mrs. Young] was more likely than not a cause of the stroke. Put simply, without any defense expert witness offering an opinion that M[r]s. Young's actions caused injury, [Appellants], as the nonmoving party, cannot prove an essential element of comparative fault at trial.

On July 10, 2015, Appellants filed a response in opposition to the motion for partial summary judgment stating that the deposition testimony of Dr. Brown, Appellees' expert witness, "create[d] a genuine issue of material fact as to whether M[r]s. Young was non[-]compliant, and whether that non[-]compliance caused her injuries."

On July 15, 2015, the Circuit Court for Shelby County (the "trial court") heard the motion for partial summary judgment on the affirmative defense of comparative fault. The trial court granted the motion by order of August 20, 2015. Appellants filed a motion to reconsider, which was denied by the trial court by order dated September 11, 2015.

On September 16, 2015, Appellants filed a Tennessee Rule of Appellate Procedure 9 motion, seeking permission from the trial court for an interlocutory appeal of the grant of partial summary judgment. On September 23, 2015, Appellees filed a response in opposition to Appellants' motion for interlocutory appeal. On November 19, 2015, the trial court entered an order granting permission for Appellants to seek an interlocutory appeal. Appellants filed their application for an interlocutory appeal to this Court on December 4, 2015. This Court

denied the application for interlocutory appeal because it was not timely. *See* Tenn. R. App. P. 9(c) (providing that the application for permission to appeal must be filed "with the clerk of the appellate court within 10 days after the date of entry of the order in the trial court"). Therefore, the latest date possible for filing the application to this Court was November 30, 2015.

On December 17, 2015, Appellants filed a Tennessee Rule of Civil Procedure 60.01 motion to vacate or amend the trial court's order granting permission to appeal, with an affidavit of counsel that the parties had neither been notified nor received a copy of the order until December 1, 2015. On December 18, 2015, the trial court granted Appellants' motion, vacating its prior order granting permission for interlocutory appeal and entering a new order that same date, granting permission for interlocutory appeal. On December 22, 2015, Appellants timely filed a second application for interlocutory appeal to this Court, which we granted by order of February 3, 2016.

## II. Issues

In our February 3, 2016 order, we certified the following issues for review under Tennessee Rule of Appellate Procedure 9:

1.    Is a motion for summary judgment brought by a plaintiff an appropriate procedural mechanism for disposing of an affirmative defense?
2.    Did the trial court err in granting [Appellees'] motion for partial summary judgment on the issue of comparative fault?
3.    Did the trial court err in denying [Appellants'] motion to reconsider?

## III. Record on Appeal

Before turning to the substantive issues, we first address certain procedural shortfalls in the appellate record. Specifically, we refer the parties to Tennessee Rule of Appellate Procedure 24(a), concerning the content of the appellate record. This Rule provides, in relevant part:

The following papers filed in the trial court are excluded from the record: (1) subpoenas or summonses for any witness or for any defendant when there is an appearance for such defendant; (2) all papers relating to discovery, including depositions, interrogatories and answers thereto, reports of physical or mental examinations, requests to admit, and all notices, motions or orders relating thereto; (3) any list from which jurors are selected; and (4) trial briefs; and (5) minutes of opening and closing of court. Any paper relating to discovery and offered in evidence for any purpose shall be clearly identified and treated as an exhibit. No paper need be included in the record more than once.

- 4 -

Tenn. R. App. P. 24(a). In this case, Appellants filed a designation of the record, attempting to limit the record to certain enumerated filings. Nevertheless, the record contains filings outside the record designation, including motions *in limine* relating to discovery and other motions and documents unrelated to the issues certified in this appeal. It is, of course, incumbent on the parties to review the record as prepared by the clerk before it is transmitted to this Court. Because we often see extraneous filings in appellate records, we take this opportunity to remind future litigants that they should endeavor to adhere to the Tennessee Rules of Appellate Procedure when submitting records to this Court. To do otherwise, the parties place on this Court a duty that falls to them, i.e., to **prepare** the appellate record. We now turn to address the substantive issues.

## IV. Standard of Review

At issue in this interlocutory appeal is the grant of a motion for partial summary judgment on the issue of comparative fault in a healthcare liability case. We note that the trial court, in its order granting the motion for summary judgment, stated: "[t]his action **accrued** in March 2011; therefore, the standard for granting summary judgment set forth in *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1 (Tenn. 2008)[,] applies" (emphasis added). For purposes of the summary judgment standard, the date of **filing**, not accrual, determines the standard by which the trial court is to judge the motion for summary judgment. For actions filed on or after the July 1, 2011 effective date for Tennessee Code Annotated Section 20-16-101, the statute, not *Hannan*, provides the correct standard. *See, e.g.*, *Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 260-61 n.7 (Tenn. 2015) (finding that Section 20-16-101 "does not apply in this appeal because the Ryes **filed** this action before the statute's July 1, 2011 effective date") (emphasis added); *Estate of Boote v. Roberts*, No. M2012-00865-COA-R3-CV, 2013 WL 1304493, at *9 (Tenn. Ct. App. Mar. 28, 2013) (stating that where an action was filed after July 1, 2011, "the trial court was required to apply the summary-judgment standard set forth in Tennessee Code Annotated § 20-16-101"). Even though the date of accrual in this case was when Mrs. Young suffered her stroke in March of 2011 (i.e., before the July 1, 2011 effective date for Section 20-16-101), the date of filing was September 29, 2011 (i.e., after the July 1, 2011 effective date for Section 20-16-101). Accordingly, the motion for summary judgment is not governed by *Hannan*, as the trial court stated; rather, it is governed by Tennessee Code Annotated section 20-16-101, which provides:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
> 1. Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
> 2. Demonstrates to the court that the nonmoving party's evidence is

- 5 -

> insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101 (Supp. 2014) (effective July 1, 2011).

Our usual course of action in a case where a trial court applies an incorrect legal standard would be to vacate the judgment and remand for further proceedings; however, where a nonmoving party in a motion for summary judgment raises a dispute of material fact, then a trial court's grant of summary judgment under any standard would be improper. We review a trial court's rulings on questions of law, such as motions for summary judgment, *de novo* with no presumption of correctness. ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008). In doing so, "[t]his Court must make a fresh determination that the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied," or that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; ***Mathews Partners, L.L.C. v. Lemme***, No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at *3 (Tenn. Ct. App. Oct. 2, 2009) (citing ***Hunter v. Brown***, 955 S.W.2d 49, 50-51 (Tenn.1997)). In other words, under either ***Hannan*** or Section 20-16-101, a dispute of material fact will preclude the grant of summary judgment. As stated by this Court in ***Evco Corp. v. Ross***, 528 S.W.2d 20, 25 (Tenn.1975):

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

***Id.*** Therefore, we will first determine whether there is a dispute of material fact before summarily vacating the appeal and remanding for reconsideration. If there is a dispute of material fact, we may reverse the grant of summary judgment under either standard; in that case, remand would be an unnecessary procedural delay.

## V. Analysis

### A. Summary Judgment as a Procedural Mechanism for an Affirmative Defense

Turning to the first issue, i.e., whether a motion for summary judgment is an appropriate procedural mechanism for disposing of an affirmative defense, we find nothing in the Tennessee Rules of Appellate Procedure, nor in our caselaw, to preclude consideration of comparative fault in a summary judgment motion. Rather, our caselaw is replete with

examples of disposition of various affirmative defenses by summary judgment. *See*, *e.g.*, *Sherrill v. Souder*, 325 S.W.3d 584 (Tenn. 2010) (finding that summary judgment could be applied to the affirmative defense of expiration of statute of limitations); *Woodard v. Gross*, No. W2011-02316-COA-R3-CV, 2012 WL 3893519 (Tenn. Ct. App. Sept. 10, 2012) (affirming that the trial court's grant of summary judgment was proper based on the affirmative defense of the statute of repose); *Carlen v. Jackson*, No. M2000-02564-COA-R3-CV, 2001 WL 1090513 (Tenn. Ct. App. Sept. 19, 2011) (affirming the trial court's grant of partial summary judgment on the issue of comparative fault as an affirmative defense). Although "comparative fault is typically a question for the trier of fact," if the moving party meets the standard set out in Tennessee Rule of Civil Procedure 56, the motion for summary judgment must be granted. *Ellington v. Jackson Bowling & Family Fun Ctr.*, No. W2012-00272-COA-R3-CV, 2013 WL 614502, at \*10 (Tenn. Ct. App. Feb. 19, 2013) (citing *Norris v. Pruitte*, No. 01A01-9709-CV-00506, 1998 WL 1988563, at \*3 (Tenn. Ct. App. Aug. 24, 1998)). In the absence of any countervailing authority (of which we find none), we decline to carve out an exception excluding the affirmative defense of comparative fault from disposition by summary judgment.

### B. Appellee's Motion for Partial Summary Judgment

As to the second issue, i.e., whether the trial court erred in granting Appellees' motion for partial summary judgment on the issue of comparative fault, as noted above, under any standard for summary judgment, if there is a dispute of material fact as to the affirmative defense, the grant of summary judgment was error. For a question of fact "[t]o be material, a fact must be germane to the claim or defense on which the summary judgment is predicated." *Eskin v. Bartee*, 262 S.W.3d 727, 732 (Tenn. 2008); *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999). Appellants contend that the pleadings, depositions, answers to interrogatories, and admissions raise a dispute of material fact concerning whether Mrs. Young's non-compliance with her doctors' instructions to return for a follow-up check of her INR level caused her stroke. In their motion for summary judgment, Appellees contend that summary judgment on the affirmative defense of comparative fault is proper because "put simply, without any defense expert witness, offering an opinion that M[r]s. Young's actions caused injury, [Appellants], as the non[-]moving party, cannot prove an essential element of comparative fault at trial." In its order granting partial summary judgment on the issue of comparative fault, the trial court found:

8. None of the medical experts in this case have opined that Mrs. Young's acts or failure to act contributed to the injury that is the subject of this lawsuit.

9. Although Plaintiffs' expert pharmacist, James Brown, PharmD, testified Mrs. Young was non[-]compliant with recommended follow-up, he was not able to determine to a reasonable degree of medical certainty that Mrs. Young's outcome would have been different had she

complied.

10. Plaintiffs have affirmatively negated the element of causation in regard to Defendants' affirmative defense of comparative fault.

11. In response to Plaintiffs' properly supported motion for partial summary judgment, Defendants are required to show that a genuine issue of material fact exists regarding their affirmative defense of comparative fault.

\* \* \*

13. Defendants have not otherwise carried their burden of producing evidence of specific facts regarding Plaintiff Stephny Young's comparative fault.

14. Viewing the facts in Defendants' favor, it is clear that no genuine issue of material fact exists with respect to Defendants' comparative fault defense.

15. Plaintiffs are entitled to summary judgment as regards Defendants' affirmative defense of comparative fault.

Appellants argue that the affirmative defense of comparative fault is supported by the testimony of Appellees' expert witnesses, all of whom opined that Mrs. Young was non-compliant by failing to return to the Stern Clinic for an INR level test within the prescribed time. Specifically, Appellants cite to the deposition testimony of Dr. James R. Brown, Appellees' expert pharmacist. Dr. Brown testified, in pertinent part, as follows:

Q. [Mrs. Young] was seen at the [Stern] [C]linic on, what, February the 25th of 2011?

A. Yes.

Q. And she was instructed to return in 7 to 10 days?

A. Yes.

Q. Did you find any evidence that she returned within that period of time?

A. No.

\* \* \*

Q. Can we then agree that[,] at least on the February 25 visit[,] she was not compliant with her instructions to return within 7 to 10 days?

A.      She didn't go back.

* * *

Q.      Is that a yes?

A.      That's a yes.

During the deposition, Appellants also asked Dr. Brown to opine as to what would have occurred had Mrs. Young returned to the Stern Clinic for her follow-up appointment:

Q.      All right. And if she had come in, if she had been compliant and had followed the instructions, then you are certain they would have checked her INR when she returned, aren't you?

A.      I think I can say that, yes.

* * *

Q.      And if she had come in and if asked, are you on any medications and if she had said Fioricet, in your opinion, the doctor or nurse practitioner or whoever she spoke with at Stern would have said, we need to take a look at this, or words to that effect?

A.      Yes.

* * *

Q.      Okay. And in your opinion, if she was taking the Fioricet, that would have adversely impacted her Coumadin and thus her INR level?

A.      Yes.

Q.      And adversely impacted, by that I mean it would have been lower, it would have still been sub-therapeutic?

A.      In all likelihood.

Q.      Okay. And then the doctor or nurse practitioner or whoever at Stern Coumadin Clinic could have dealt with the issue at that point, right?

- 9 -

A.     Yes.

                                    * * *

Q.     Okay. But I want to make it clear that I understand you. That if she had come in to the Stern Clinic as instructed, okay, on or before March the 7th of 2011, okay, then some change, in your opinion, would have been made and she wouldn't be in the condition she's in today?

A.     In all likelihood.

Q.     Okay. Because her stroke didn't occur for two more weeks?

A.     Right.

Appellees' expert witness, Dr. Richard Stein, also provided an opinion as to what would have occurred had Mrs. Young returned to the Stern Clinic for her follow-up appointment:

Q.     If she had come in, in your opinion, during that March 4 through the 7th, and if this subject had been broached, okay, and they had become aware of it at the Stern Clinic and she had been instructed to stop it, okay, stop the Fioricet, she never would have had the stroke; you agree with that?

A.     Under the assumption that it comes up in discussion and they advise her to stop it, and she stops it, just like it would if it had never been prescribed, she wouldn't have had the stroke. . . .

Dr. Stein's opinion gives rise to a reasonable inference, which (at the summary judgment stage) must be given in favor of the nonmoving party, that if Mrs. Young had returned for her appointment to the Stern Clinic as instructed, her stroke would not have occurred. *See Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (concluding that, when considering a motion for summary judgment, courts must consider the evidence in a light most favorable to the nonmoving party and draw reasonable inferences from the evidence in the nonmoving party's favor). Inferentially, Mrs. Young's non-compliance was a likely cause of her stroke. In other words, based on the testimony of Dr. Brown and Dr. Stein, we conclude that "reasonable minds could justifiably reach different conclusions based on the evidence at hand" as to whether Mrs. Young's failure to comply with her doctor's instructions in returning to Stern for an INR level follow-up appointment contributed to her stroke. *Green v. Green*, 293 S.W.3d 493, 514 (Tenn. 2009).

Contrary to the trial court's findings, *supra*, Dr. Brown clearly agrees that Mrs. Young was non-compliant in failing to follow her doctors' instructions in keeping a follow-up appointment to check her INR level, and he further opines that "had [Mrs. Young] come in to the Stern Clinic as instructed… on or before March the 7th of 2011… then some change… would have been made and she wouldn't be in the condition she's in today."

Here, Appellants argue two alternative theories of their case. First, Appellants argue that the Fioricet prescription from Dr. Jordan did not affect Mrs. Young's INR level and, thus, did not cause her stroke. In the alternative, Appellants contend that Mrs. Young's comparative fault, by non-compliance in failing to return to the Stern Center for an INR level check, at least contributed to her stroke. The trial court's grant of partial summary judgment on the affirmative defense of comparative fault forecloses the Appellants from presenting this alternative theory of the case, which arguably is supported by the expert proof. Both Dr. Brown and Dr. Stein testified, either directly or inferentially, that Mrs. Young was non-compliant in failing to follow medical advice and that her non-compliance could have contributed to her stroke; this testimony creates a clear dispute of material fact, which related directly to Appellants' alternative theory of the case. Accordingly, Appellees' argument that summary judgment is proper because the Appellants have not provided proof that Mrs. Young was non-compliant is unpersuasive. In light of the dispute of material fact raised by the evidence, summary judgment is precluded. We pretermit Appellants' remaining issue concerning the motion to reconsider.

## VI. Conclusion

For the foregoing reasons, we reverse the order of the trial court granting partial summary judgment in favor of the Appellees. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are assessed against the Appellees, Stephny Denise Young and Ben Young, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE