IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 27, 2015 Session

## H & J DITCHING & EXCAVATING, INC. v. CORNERSTONE COMMUNITY BANK

**Appeal from the Circuit Court for Knox County**
**No. 2-560-13     Jon Kerry Blackwood, Judge[1]**

**No. E2015-01060-COA-R3-CV-FILED-FEBRUARY 19, 2016**

Plaintiff H & J Ditching & Excavating, Inc. (Contractor) was hired by JRSF, LLC (Developer) to perform excavating and grading work on a subdivision construction project (the project) in West Knox County. Defendant Cornerstone Community Bank (Lender) provided financing for the project with a $2,512,500 construction loan. Complications arose, including the bankruptcy of one of Developer's primary members. Developer defaulted on the construction loan. Lender foreclosed and took possession by bidding on the property at the foreclosure sale. Contractor alleges that it completed the grading and infrastructure work but that it only received 90% of the contract price. Contractor brought this tort action against Lender, alleging intentional and negligent misrepresentation to-wit, by assuring Contractor that the construction loan to Developer was "fully funded" and that Contractor would be paid for its work. The trial court granted Lender summary judgment, finding that (1) Lender made no false or misleading statements and (2) the proximate cause of Contractor's alleged injury in not receiving its final 10% payment was Contractor's failure to request and obtain an engineer's certificate of final completion, a condition precedent to payment under its contract with Developer. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Arthur F. Knight, III, and Jonathan Swann Taylor, Knoxville, Tennessee, for appellant, H & J Ditching & Excavating, Inc.

---

[1] Sitting by designation.

P. Edward Pratt, Knoxville, Tennessee, for appellee, Cornerstone Community Bank.

**OPINION**

**I.**

On December 18, 2007, Contractor excuted agreements with Developer to perform excavation, grading, and other work for the project, a residential subdivision known as Terra Vista.  In a one-sentence letter dated December 31, 2007, Lender notified Contractor that "[f]inancing is in place for [Developer] for the residential subdivision named 'Terra Vista.' "  The contract between Developer and Contractor provided for periodic payments, prior to substantial completion of the project.  Upon substantial completion, Contractor was to receive the balance due on its contract less a 10% retainage.  Contractor commenced work on the project and received periodic payments for 90% of the total work completed and approved.

In November 2008, Derek Keck, Knox County Stormwater Department's primary inspector for the project, inspected the Terra Vista property and found it in violation of environmental regulations requiring stablization and erosion control of the newly excavated and graded soils.  Keck stated in his affidavit:

> on November 18, 2008, Knox County Stormwater issued a Notice of Violation to the owner of the Project . . . [I]t was noted that all grading of the Project was final but that no stabilization as is required by environmental regulations had been performed.  It was my understanding that [Contractor] was the contractor on the Project responsible for stabilization of the exposed and graded portions of the Project.
>
> *      *      *
>
> On November 21, 2008, [Contractor] gave Notice of Termination - Storm Water Discharges Construction Activity to TDEC [Tennessee Department of Environment and Conservation] for the Project with the explanation: "Due to financial decline in the economy we are no longer working at the job site. . . ."

2

The Project was not substantially complete at this time. My understanding is that [Contractor] pulled off the Project because it was not being paid.

*    *    *

Following a change in ownership, on March 19, 2010, I prepared and my supervisor forwarded a Notice of Violation to [Lender] documenting that: "An inspection of your site on March 17 found your site to be deficient in this area. Approximately 75% of this property is not adequately stabilized. All raw areas should be stabilized. Prior to applying stabilization measures, any rills and ruts should be regraded."

On or about March 17, 2010, I took numerous photographs documenting the lack of stabilization and incomplete condition of the Project. . . . [T]hey document the lack of stabilization on the Project through March 17, 2010, but this lack of stabilization on the Project existed at least from November 2008.

[Lender] undertook stabilization through a contractor other than [Contractor] which was not completed and signed off on by Knox County Stormwater, and the Knox County Law Director's Office, until November 1, 2010.

(Paragraph numbering in original omitted.)

According to the affidavits of Contractor's shareholders, Contractor "substantially completed the project on February 11, 2009." They further stated as follows:

Essentially, [Contractor] cleared, excavated and graded the entire Terra Vista development. We cut all the roads of the subdivision into the land, built ponds, implemented the drainage plan designed by the engineers, and installed all utilities, including sewer, water and electric into the subdivision. It was a turn-key job, and we did everything but lay the asphalt.

*    *    *

3

Back in late November 2008, [Lender] suddenly and abruptly told us that the bank would no longer fund the project. We inquired about the retainage that [Lender] was holding and whether that would be disbursed to us. We were told it would not be so disbursed. Nevertheless, we substantially completed the project and upheld our version of the Contracts. [Lender] was well aware that we completed our work, and that they were withholding the retainage that was fully owed under the Contracts.

The contract between Developer and Contractor required the issuance of a certificate of substantial completion before final payment to Contractor would become due. No certificate was ever issued, and there is no proof in the record that Contractor ever requested the project engineer to issue one.

As previously noted, following Developer's default under its agreements with Lender, Lender foreclosed in early December 2009 and took possession of the property as high bidder at the foreclosure sale. Lender hired another contractor to complete the Terra Vista project, expending an additional $410,556.60 above the roughly $2.5 million construction loan proceeds.

Contractor brought this action alleging intentional and negligent misrepresentation by Lender. Contractor argues that Lender "made multiple false statements . . . that [Developer] was financially sound, that [Lender's] loan to [Developer] was 'fully funded' and that [Contractor] would be paid for the work it completed on the Terra Vista project." Lender moved for summary judgment and filed, among other things, the affidavit of Lynn Vandergriff, special assets officer for Lender, which states:

> [Lender] foreclosed its deed of trust on the Project in December 2009. The Project was far from complete, so much so, that in March 2010, [Lender] received a Notice of Violation from Knox County Stormwater that 75% of the stabilization measures for the raw grading had never been implemented and that [Lender] would receive substantial daily fines if not immediately remedied.

* * *

4

[Lender] funded $2,511,927.76 of the Loan to [Developer], which was in the initial amount of $2,515,500.00.[2] In addition, [Lender] made payments toward completion of the Project . . . of $410,556.60, for total payments related to the Project of $2,922,484.36.

Not only did [Lender] fully fund the Loan, to complete the unfinished work of [Contractor] on the Project, it expended an additional $406,984.36 above the Loan proceeds limit . . . for work on the Project.

(Paragraph numbering in original omitted.) Following a hearing, the trial court granted Lender summary judgment, stating in pertinent part:

[Contractor] has sued [Lender] for misrepresentation. [Contractor] alleges that employees of [Lender] misrepresented to [Contractor] that the project was fully funded and that they would be paid. At the time of [Contractor's] conclusion of their work, a 10% retainage in the amount of $220,119.17 was owed to [Contractor]. . . .

The contracts that are relevant to the payment of funds to [Contractor] are the construction contract and the construction loan agreement. It is undisputed that the final payment of the retainage was dependent upon the issuance of a certificate of substantial completion by the project engineer. It is further undisputed that a certificate of substantial completion has never been issued. The reasons for failure of the project engineer to issue the certificate are the issues that relate to [Developer's] suit against [Contractor]. Nevertheless, the fact that no certificate has been issued is undisputed.

The purported injury in this case is the failure to receive the final retainage held by [Lender]. Even if misrepresentations were made by [Lender], the proximate cause of [Contractor's] alleged injury is not based upon false or misleading statements. The proximate cause for their alleged injury is

---

[2] There is a $3,000 discrepancy between this amount and the actual amount of the loan, according to the loan documents themselves, which were attached as an exhibit to Vandergriff's affidavit. The correct amount of the loan is $2,512,500, not $2,515,500. Lender argues that the amount stated in the affidavit is the result of a "scrivener's error."

their failure to obtain the issuance of the certificate. Consequently, [Lender] has refuted an essential element of [Contractor's] claim and [s]ummary [j]udgment is appropriate.

Additionally, the affidavit of Mr. Vandergriff establishes that the loan was fully funded. There may exist a four thousand dollar discrepancy in his affidavit and the actual loan amount. However, [Lender] eventually expended more on the project than the original loan required. Furthermore, the lack of four thousand dollars to a 2.5 million dollar loan could hardly be classified as a material misrepresentation. Consequently, the Court concludes that [Lender] has refuted an essential element of [Contractor's] claim, i.e. false statement. Summary [j]udgment in [Lender's] favor is warranted.

The trial court also denied Contractor's motion to amend its complaint. Contractor timely filed a notice of appeal.

## II.

The issues presented are (1) whether the trial court erred in granting Lender summary judgment on the ground that it negated two elements of Contractor's misrepresentation claims – false statement and proximate causation; and (2) whether the trial court erred in denying Contractor's motion to amend its complaint.

## III.

Regarding our standard of review of a grant of summary judgment, the Supreme Court has recently determined:

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness.

\* \* \*

6

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . . The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye v. Women's Care Ctr. of Memphis, MPLLC*, No. W2013-00804-SC-R11-CV, 2015 WL 6457768, at *12, *22 (Tenn., filed Oct. 26, 2015) (italics in original). In making the determination of whether summary judgment was correctly granted,

[w]e must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

*Wells Fargo Bank, N.A. v. Lockett*, No. E2013-02186-COA-R3-CV, 2014 WL 1673745, at *2 (Tenn. Ct. App. E.S., filed Apr. 24, 2014).

## IV.

The elements of a claim for intentional misrepresentation are as follows:

(1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the

7

misrepresented material fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

*Stanfill v. Mountain*, 301 S.W.3d 179, 188 (Tenn. 2009) (quoting *Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008)). The Supreme Court further observed in *Stanfill* that "[t]o succeed on a negligent misrepresentation claim, a plaintiff must establish that: (1) the defendant supplied information to the plaintiff; (2) the information was false; (3) the defendant did not exercise reasonable care in obtaining or communicating the information; and (4) the plaintiffs justifiably relied on the information." *Id.* at 189.

The allegedly false statement claimed by Contractor is Lender's assurance that the construction loan was "fully funded." It is not disputed that Lender's agents made such a statement to Contractor. Neither is it disputed that Lender funded $2,511,927.76 of the construction loan, the initial amount of which was $2,512,500. Contractor argues that "what was supposed to be" the correct amount of the loan was $2,515,500, as stated in Vandergriff's affidavit, notwithstanding the fact that both the construction loan agreement and the construction disbursal agreement executed by Lender and Developer state that the loan is in principal amount of $2,512,500. As stated in its brief, Contractor further argues:

> [Lender] admittedly *did not fully fund* the loan prior to the foreclosure, as Lynn Vandergriff's affidavit states that [Lender] funded only $2,511,927.76 of what was supposed to be a $2,515,500.00 loan. The trial court found that this discrepancy "could hardly be classified as a material misrepresentation;" however, [Contractor] contends that the discrepancy is material and that it creates an issue of fact which should be submitted to a jury.

(Emphasis in original; citation to record omitted.) Using the correct amount of the loan, Lender paid out $572.24, or 0.0228 percent, less than the $2,512,500 construction loan. Using Contractor's numbers, Lender funded $3,572.24, or 0.142 percent, less than the amount alleged by Contractor, $2,515,500. Either way, the resulting deficiency is not material. It is de minimus. Furthermore, the construction loan agreement provides as follows:

> **COMPLETION OF IMPROVEMENTS BY LENDER**. If Lender takes possession of the Collateral, it may take any and all actions necessary in its judgment to complete construction of the Improvements . . .

\*　　\*　　\*

> In any event, all sums expended by Lender in completing the construction of the Improvements will be considered to have been disbursed to Borrower and will be secured by the Collateral for the loan.

(Capitalization and bold font in original.) It is undisputed that, after Contractor pulled off the project, Lender made payments toward its completion to contractors other than plaintiff in the amount of $410,556.60. In addition, it is clear that the Lender funded roughly 99.98% of the construction loan to Developer. On appeal, Contractor argues that Lender did not "take possession" of the collateral property by foreclosing on it and purchasing it at the foreclosure sale. This argument is unpersuasive. We agree with the trial court that Lender's statement to Contractor that the construction loan was "fully funded" was neither false nor misleading.

We further hold that the trial court correctly decided that the undisputed facts establish that the proximate cause of Contractor's alleged injury was its failure to request and obtain the project engineer's certificate of final completion as contractually required. The contracts executed by Developer and Contractor call for payments in the amount of 90% of the work completed, until Contractor believes that all work is substantially complete. At that point, the agreements provide:

> When Contractor considers the entire Work ready for its intended use *Contractor shall notify Owner and Engineer in writing that the entire Work is substantially complete* (except for items specifically listed by Contractor as incomplete) *and request that Engineer issue a certificate of Substantial Completion.*

(Emphasis added.) As can be seen, after the project engineer issues the certificate of substantial completion, final payment to Contractor becomes due and payable. It is undisputed that the project engineer did not issue a certificate, and there is no proof that Contractor requested one.

The affidavits of Contractor's shareholders state that "we substantially completed the project on February 11, 2009." Contractor's appellate brief does not address or mention the statements in the affidavits of Keck and Vandergriff that the project lacked sufficient stabilization and erosion controls. Keck's affidavit was supported by documentation of several notices of violation issued by the Knox County Stormwater

9

Department and numerous photographs showing the lack of stabilization and incomplete condition of the project from November 2008 through March 2010.

The agreement between Contractor and Developer provides the following description of the work that Contractor agreed to complete:

> Contractor shall complete all Work as specified or indicated in the Contract Documents. The Work is generally described as follows:
>
> Clearing & grubbing, demolition of one existing house, removal of debris, grading and ditching to subgrade, construction of storm drain system, construction of detention pond and related structures, backfill and shaping behind curbs, construction of water distribution network, construction of sanitary sewer system, *installation and maintenance of all erosion control measures*, inspections and record keeping as required by storm water pollution prevention plans (SEPP), smoothing of lots after final grading completed, *final soil stabilization according to storm water pollution prevention plan*. All of the above as specified in the contract drawings and documents.

(Emphasis added.) Lender, arguing that the proximate cause of Contractor's failure to receive the final 10% payment was due to Contractor's own failures, asserts that

> [a]s an experienced excavating and grading contractor, [Contractor] knew precisely what it was doing by abandoning newly graded earth without stabilization and erosion control in the middle of winter. The Project literally washed away.

Even if we assume, arguendo, that the evidence is sufficient to create a genuine issue of material fact regarding whether Contractor actually completed all the work it contracted to do, it remains undisputed that no certificate of substantial completion was ever issued, a condition precedent to final payment.

Contractor argues that the trial court erred in denying its motion to amend the complaint. The Supreme Court has provided the following guidance regarding our review of the denial of a motion to amend:

The grant or denial of a motion to amend a pleading is discretionary with the trial court. *Harris v. St. Mary's Med. Ctr., Inc.*, 726 S.W.2d 902, 904 (Tenn. 1987). Generally, trial courts must give the proponent of a motion to amend a full chance to be heard on the motion and must consider the motion in light of the amendment policy embodied in Rule 15.01 of the Tennessee Rules of Civil Procedure that amendments must be freely allowed; and, in the event the motion to amend is denied, the trial court must give a reasoned explanation for its action. *Henderson v. Bush Bros. & Co.*, 868 S.W.2d 236, 238 (Tenn. Workers' Comp. Panel 1993). Although permission to amend should be liberally granted, the decision "will not be reversed unless abuse of discretion has been shown." *Welch v. Thuan*, 882 S.W.2d 792, 793 (Tenn. Ct. App. 1994). Factors the trial court should consider when deciding whether to allow amendments include "[u]ndue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979).

In *Branch v. Warren*, 527 S.W.2d 89 (Tenn. 1975), we discussed the effect of Rule 15.01 of the Tennessee Rules of Civil Procedure:

> The new Rules of Civil Procedure, in this regard "come not to destroy the old law, but to fulfill." They were designed to simplify and ease the burden of procedure under the sometimes harsh and technical rules of common law pleading. Accordingly, *Rule 15.01 provides that leave (to amend) shall be freely given when justice so requires. This proviso in the rules substantially lessens the exercise of pre-trial discretion on the part of a trial judge.* Indeed, the statute (§ 20–1505, T.C.A.) which conferred a measure of discretion on trial judges was repealed and Rule 15 stands in its place and stead. That rule needs no construction; it means

11

precisely what is says, that "leave shall be freely given."

> *Id.* at 91–92 (emphasis added). Later, in ***Gardiner v. Word***, 731 S.W.2d 889, 891 (Tenn. 1987), this Court confirmed that ***Branch*** required trial courts to be liberal in allowing pretrial motions to amend.

***Cumulus Broad., Inc. v. Shim***, 226 S.W.3d 366, 374-75 (Tenn. 2007) (emphasis in original).

We have reviewed the proposed amended complaint filed by Contractor and compared it with the original complaint. It contains slightly reworded restatements of the initially filed causes of action. There are no new substantive allegations or assertions; it just rehashes the complaint in somewhat different and a few additional words. At oral argument, Contractor's counsel admitted that the proposed amended complaint "didn't change the substance of the misrepresentation claim; it did reword things a little bit just to make it more clear." The proposed amendment was obviously futile and would not have changed the outcome of this case if it had been granted. The trial court did not abuse its discretion in denying the motion to amend.

## V.

The trial court's summary judgment in Lender's favor is affirmed. Costs on appeal are assessed to the appellant, H & J Ditching & Excavating, Inc. The case is remanded for collection of costs assessed below, pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE

12