IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 19, 2020 Session

## ROY KELLY ET AL. v. DEBRE KERANIO MEDHANIALEM ETHIOPIAN ORTHODOX TEWAHEDO CHURCH ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 17C938   Thomas W. Brothers, Judge**

———————————————————

**No. M2019-02238-COA-R3-CV**

———————————————————

Parents sued a property owner after their child, while playing on the property, received an electrical shock from a downed power line. The property owner moved for summary judgment. Based on the undisputed facts, the trial court determined that the property owner was essentially a landlord and had neither actual nor constructive knowledge of the downed power line. So the court dismissed the parents' claims against the property owner. On appeal, the parents argue that the property owner was a co-possessor of the portion of the property where the child was injured rather than a landlord. And, as a result, they contend that the property owner owed a duty to inspect the property to discover dangerous conditions such as the downed power line. At the very least, they contend that the question of constructive notice was for the jury. We affirm the grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Rocky McElhaney and Justin Hight, Hendersonville, Tennessee, for the appellants, Roy Kelly, Rufta Aron, and minor child.

Warren M. Smith, Nashville, Tennessee, for the appellee, Debre Keranio Medhanialem Ethiopian Orthodox Tewahedo Church.

# OPINION

## I.

### A.

Debre Keranio Medhanialem Ethiopian Orthodox Tewahedo Church ("Ethiopian Church") owns property on Welch Road in Nashville, Tennessee. Four buildings sit on the Welch Road property: a building used as a sanctuary; a fellowship hall; a residence for visiting priests and deacons; and a structure used for storage and, on occasion, for refugee housing. The sanctuary building and fellowship hall were located next to each other, while the other buildings were off to either side.

In 2011, Ethiopian Church stopped using the Welch Road property as its primary place of worship. Late the following year, it entered into "an arrangement" with St. Mary Eritrean Orthodox Tewahedo Church of Nashville, Tennessee ("St. Mary Church"). The arrangement allowed St. Mary Church to use the sanctuary building and the fellowship hall at the Welch Road property. In exchange, St. Mary Church made a monthly donation to Ethiopian Church, which varied in amount. St. Mary Church also took on responsibility for minor maintenance and upkeep of the two buildings and paid the electric bill. The electric bill was in the name of St. Mary Church.

St. Mary Church used the sanctuary building and the fellowship hall on Saturdays and Sundays. When Rufta Aron arrived to teach a children's Bible study on Saturday, July 16, 2016, she learned that there was a power outage at the fellowship hall. Undeterred, she taught class by the light from the windows.

During the day, Ms. Aron's Bible study class broke twice for the children to play outside. The children played in a mowed, grassy area between the fellowship hall and the sanctuary building; the grassy area was bounded by the fellowship hall and the sanctuary buildings on one side and woods on the other. Mowing the grass was the responsibility of Ethiopian Church, which paid a lawn service to do the work.

The children played in the grassy area during their two breaks without incident. After the Bible study, Ms. Aron's five-year-old son returned to the same grassy area to play. Around 2:00 p.m., the child came in contact with a downed, 4,000-volt power line owned by Nashville Electric Service ("NES"). The resulting shock produced burns over 40% of the child's body and led to the amputation of his right hand and forearm.

2

B.

Ms. Aron and the child's father, Roy Kelly, on behalf of themselves and their child, sued Ethiopian Church, St. Mary Church, and NES.[1] The parents reached a settlement with NES, and after approving the settlement, the court dismissed the claims against NES with prejudice. *See* Tenn. Code Ann. § 29-34-105 (2012) (requiring court approval of "any tort claim settlement involving a minor"). St. Mary Church filed an answer to the complaint but otherwise has not participated in the case.

Ethiopian Church answered and, after conducting discovery, moved for summary judgment. It argued that it owed no duty to the parents relative to the downed power line. Ethiopian Church also denied knowledge of the downed power line and contended that there was no evidence to support a finding that it had constructive knowledge of the danger.

The court granted summary judgment. The court found no evidence that Ethiopian Church created the dangerous condition that caused the child's injuries. It then considered whether Ethiopian Church had either actual or constructive notice of the dangerous condition. The Kellys conceded that there was no actual notice. As for constructive notice, the court determined that Ethiopian Church was "essentially . . . a landlord" and could not be expected "to conduct daily examinations or even bi-weekly examinations of . . . property that it is allowing someone else to possess." So, under the circumstances, it reasoned that the Kellys could not prove the dangerous condition existed for such a length of time that a reasonable prudent property owner should have been aware of it.

Although the claims against St. Mary Church remained pending, the court later entered an agreed order certifying its judgment dismissing the claims against Ethiopian Church with prejudice as final. *See* Tenn. R. Civ. P. 54.02. The Kellys appealed.

**II.**

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008);

_____

[1] The complaint named Metropolitan Government of Nashville and Davidson County, acting by and through the Electric Power Board and operating as Nashville Electric Service.

3

*Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *See Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. So we review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *See Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763. We view all of the evidence in the light most favorable to the nonmoving party, including resolving all inferences to be drawn from the facts in that party's favor. *See Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion and that conclusion entitles the moving party to a judgment, then the trial court's grant of summary judgment is affirmed. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

In order to prevail on a negligence claim, a plaintiff must prove "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). When the negligence claim is based upon premises liability, the plaintiff must prove, in addition to the elements of negligence, either (1) the premises owner or his employees created the dangerous condition that led to the plaintiff's injury or, (2) if a third party created the dangerous condition, the premises owner had actual or constructive notice that the dangerous condition existed before the plaintiff was injured. *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014); *Blair*, 130 S.W.3d at 764.

Here, Ethiopian Church did not bear the burden of proof at trial. So to persuade the court that no genuine and material factual issues existed and that it was entitled to summary judgment, it could either affirmatively negate an essential element of the Kellys' claim or demonstrate that the evidence at the summary judgment stage was insufficient to establish their claim. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Ethiopian Church's motion for summary judgment focused on demonstrating that the evidence was insufficient to establish a premises liability claim.

The Kellys' argue on appeal that the two keys issues are Ethiopian Church's duty of care and constructive notice. But the trial court based its grant of summary judgment on constructive notice.

Our supreme court defines "constructive notice" as "information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Kirby v. Macon Cty.*, 892 S.W.2d 403, 409 (Tenn. 1994) (quoting *Notice*, BLACK'S LAW DICTIONARY (6th ed. 1990)). In a premises liability case, a plaintiff may establish constructive notice in two ways. A plaintiff may (1) prove that a dangerous condition existed for such a length of time that a reasonably prudent property

owner should have been aware of the dangerous condition's existence or (2) prove that the dangerous condition resulted from "a pattern of conduct, a recurring incident, or a general or continuing condition." *Parker*, 446 S.W.3d at 351-52 (quoting *Blair*, 130 S.W.3d at 765).

The Kellys contend that they established constructive notice by proving that a dangerous condition existed for such a length of time that Ethiopian Church should have been aware of its existence. In response to summary judgment, they offered the affidavit of a licensed electrical engineer opining as to when the power line was downed. The electrical engineer testified that the power line was likely downed two days prior to the accident at 11:00 a.m. when a thunderstorm came through the area. And the power line was certainly down the morning prior to the accident when NES received an automated report of a "lost meter." Although a meter may not respond for other reasons, the most likely reason was the disruption of power caused by the downed power line. According to the Kellys, "surely at least 26 hours is more than enough [time]" for constructive notice, but "[a]t they very least, this issue should be submitted to the jury."

Generally, a jury must decide whether a dangerous condition existed long enough that a reasonably prudent property owner should have been aware of it. *Allison v. Blount Nat'l Bank*, 390 S.W.2d 716, 719 (Tenn. Ct. App. 1965). But the time element is not the only consideration in determining whether there is constructive notice of a dangerous condition. *Paradiso v. Kroger Co.*, 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973). In addition to the time element, "constructive notice requires some material competent evidence from which it can be logically inferred [that] the [defendant], by the exercise of ordinary care, would have or should have discovered the dangerous condition." *Id.* at 80. Here, such evidence is lacking.

For some time leading up to the accident, only St. Mary Church used the fellowship hall and the sanctuary building. The Kellys argue that Ethiopian Church could have used either building whenever they wanted. Although perhaps true, there was no evidence that Ethiopian Church did after 2011. The only involvement Ethiopian Church had with either building was that it paid the water bill and agreed to take care of large maintenance needs. As for the grassy area bounded by the two building where the child was injured, Ethiopian Church did mow the grass. And the photographs of the downed power line show that the grass had been mowed where the line fell. But nothing indicates that Ethiopian Church would have or should have discovered the downed power line prior to the accident.

The Kellys spend much time disputing the trial court's characterization of Ethiopian Church as "essentially . . . a landlord."[2] Instead, they contend that the proof showed that

_____

[2] Despite the lack of a written lease agreement, the facts support this characterization. Generally, "the landlord is not liable for injuries to the tenant caused by dangerous or defective conditions on the leased premises unless the landlord knew or in the exercise of reasonable care and diligence should have known

5

Ethiopian Church was a "co-possessor" of the Welch Road property.[3] Of course, a landlord can retain possession of a part of property that it leases. And Ethiopian Church did use other buildings on the Welch Road property. But the accident did not occur in or around those buildings. Both buildings used by Ethiopian Church were separated from the grassy area where the accident occurred by either the fellowship hall or the sanctuary building. And the evidence does not show that, in using the other buildings, Ethiopian Church exercised any control over the grassy area where the accident occurred. *See Tedder v. Raskin*, 728 S.W.2d 343, 347-48 (Tenn. Ct. App. 1987) (recognizing a landlord's responsibility for the condition of common areas under the landlord's control).

Buildings at the Welsh Road property did lose power as result of the downed power line. The electrical outage was first discovered by members of St. Mary Church, but no one informed Ethiopian Church of the outage prior to the accident. No one from Ethiopian Church was present at the property on the day of the accident.

Because Ethiopian Church did not cause the downed power line, in order to establish its liability, the Kellys had to prove that Ethiopian Church had either actual or constructive notice of the dangerous condition. *See Parker*, 446 S.W.3d at 350. They conceded that Ethiopian Church lacked actual notice. Viewing the evidence in the light most favorable to them and drawing all reasonable inferences in their favor, we conclude that the Kellys could not show that Ethiopian Church had constructive notice of the dangerous condition. They presented no evidence from which it could be logically inferred that Ethiopian Church, by the exercise of ordinary care, would have or should have discovered the downed power line prior to the accident. *See Paradiso*, 499 S.W.2d at 80.

## III.

Ethiopian Church showed that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. So we affirm the grant of summary judgment. This cause is remanded to the trial court for such further proceedings as are necessary and consistent with this opinion.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

---

of the dangerous condition at the time he leased the premises." *Tedder v. Raskin*, 728 S.W.2d 343, 347 (Tenn. Ct. App. 1987).

[3] Our courts have imposed liability for injuries resulting from dangerous conditions on property on property owners, business proprietors, innkeepers, landlords, tenants, and possessors of property, such as realtors. *Smith v. Inman Realty Co.*, 846 S.W.2d 819, 822-23 (Tenn. Ct. App. 1992).