IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 14, 2017 Session

## HELEN SHAW AS ADMINISTRATOR FOR THE ESTATE OF JOHN SUTTLE v. LAWRENCE B. GROSS, M.D., ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-004166-15  Valerie L. Smith, Judge**

_____

**No. W2017-00441-COA-R3-CV**

_____

The plaintiff in a health care liability action appeals the dismissal of her claim on the basis of the expiration of the statute of limitations and the failure to provide pre-suit notice compliant with Tennessee Code Annotated section 29-26-121(a)(3)(B). Because the undisputed facts in the record fail to establish that decedent was aware of the alleged misdiagnosis prior to his death, we reverse the trial court's ruling on this issue. We also determine that the trial court failed to apply the appropriate standard or adequately explain its decision regarding the plaintiff's alleged non-compliance with section 29-26-121(a)(3)(B). We therefore vacate the dismissal of the complaint on this basis and remand for reconsideration in light of the appropriate standard. Reversed in part, vacated in part, and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part, Vacated in Part, and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

Shantell S. Suttle, Memphis, Tennessee, for the appellant, Helen Shaw, as Administrator for the Estate of John Suttle.

John C. Ryland, Kristine E. Nelson, Thomas Parker, Ormonde B. DeAllaume, Memphis, Tennessee, for the appellees, Methodist Healthcare-Memphis Hospitals, and Lawrence B. Gross, M.D.

**OPINION**

**BACKGROUND**

The facts of this case are largely undisputed for purposes of this appeal. On May 17, 2014, John Suttle ("Decedent") presented at the emergency room of Methodist South Hospital, owned and operated by Defendant/Appellee Methodist Healthcare-Memphis Hospitals ("the Hospital"). Decedent complained of "rib-trunk pain" and headache that resulted from a fall. The same day, Defendant/Appellee Lawrence B. Gross, M.D. (together with the Hospital, "Appellees") ordered lab work and examined Decedent. According to the complaint later filed in this case, Dr. Gross diagnosed Decedent with dehydration and released Decedent to return home. The next day Decedent returned to the emergency room via ambulance when he became lethargic and unresponsive. On this date, Decedent was diagnosed with sepsis[1] and cholecystitis.[2] Decedent died on June 14, 2014. On June 18, 2014, an autopsy report confirmed Decedent's cause of death as the result of septic shock and gangrenous cholecystitis.

Beginning on June 5, 2015, Plaintiff/Appellant Helen Shaw, on behalf of Decedent's Estate ("Appellant") allegedly sent pre-suit notices of the potential claim at issue to various addresses associated with the medical providers in this case. While some notices were mailed on June 5, 2015, additional notices were mailed as late as July 29, 2015. No notices, however, were mailed at any time prior to June 5, 2015. According to Appellees, Appellant attempted to send notices to twenty-one different health care providers.

On October 5, 2015, Appellant filed a complaint for damages against Appellees. The complaint alleged that Dr. Gross was negligent in failing to properly diagnose Decedent's sepsis on May 17, 2014, and that the delay in diagnosis and treatment caused by Dr. Gross's negligence resulted in Decedent's death. Additionally, the complaint alleged that the Hospital was vicariously liable for Dr. Gross's negligence. Appellant requested both compensatory and punitive damages totaling $2,000,000.00. Appellant attached to the complaint an affidavit detailing the efforts made to send pre-suit notice to Appellees.

Dr. Gross filed an answer on November 12, 2015, denying that he committed negligence and raising the affirmative defense that the complaint was barred by the applicable statute of limitations and that pre-suit notice of the potential claim was not properly sent to Dr. Gross. On November 13, 2015, the Hospital filed a motion to dismiss, or in the alternative, for summary judgment, arguing that Appellant failed to provide notice of her potential health care liability action within the applicable statute of limitations and that Appellant failed to comply with the pre-suit notice provisions of the Tennessee Health Care Liability Act ("THCLA"). The Hospital's motion was

---

[1] Sepsis is defined as "infection; contamination." *Mosby's Dictionary of Medicine, Nursing, & Health Professions* 1624 (9th ed. 2013).

[2] Cholecystitis is defined as "acute inflammation of the gallbladder." *Mosby's Dictionary of Medicine, Nursing, & Health Professions* 351 (9th ed. 2013).

accompanied by a memorandum of law and a statement of undisputed material facts. Appellant responded in opposition to the Hospital's motion on December 14, 2015, arguing that genuine issues of material fact precluded summary dismissal. Appellant accompanied her response with a response to the Hospital's statement of undisputed facts, largely admitting the facts surrounding Decedent's hospitalization, but denying that the statute of limitations had expired.

On January 21, 2016, Dr. Gross filed a motion to amend his answer to allege additional averments related to the expiration of the statute of limitations and Appellant's compliance with the THCLA pre-suit notice requirements. The trial court granted Dr. Gross's motion to amend by order of February 12, 2016.

On March 8, 2016, Dr. Gross filed a motion to dismiss, or in the alternative, for summary judgment. Therein, Dr. Gross argued that Appellant's claim was barred by the applicable statute of limitations and for failure to comply with the THCLA. The motion was accompanied by the affidavit of Dr. Gross, a memorandum of law, and a statement of undisputed material facts. On May 19, 2016, the Hospital filed its answer to the complaint, raising the expiration of the statute of limitations as an affirmative defense. In June 2016, Appellant responded in opposition to Dr. Gross's motion. On August 10, 2016, the Hospital joined in Dr. Gross's motion.

Eventually, the trial court held a hearing on the pending motions to dismiss or for summary judgment and took the matter under advisement. On January 17, 2017, the trial court issued an oral ruling granting summary judgment in favor of Appellees. With regard to the statute of limitations issue, the trial court ruled that the statute of limitations began to run on May 18, 2014, meaning that all of the pre-suit notices sent by Appellant were untimely. The trial court further ruled that, however, even if the statute of limitations did not begin to run until the autopsy report was released on June 18, 2014, Appellant failed to establish that she sent timely notices to Appellees pursuant to the mailing requirements of the THCLA. Finally, the trial court declined to rule on Appellees' argument that the pre-suit notice was deficient because the notices did not contain HIPAA-compliant medical authorizations as required by the THCLA. The trial court later entered an amended order. From this ruling, Appellant now appeals.

### ISSUES PRESENTED

Appellant raises a single issue: Whether the trial court erred in granting summary judgment to Appellees. Additionally, Appellees assert that this Court should affirm the dismissal of Appellant's complaint for failure to provide a HIPAA-compliant medical authorization.

### STANDARD OF REVIEW

- 3 -

Although Appellees filed motions to dismiss, or in the alternative, for summary judgment, the trial court's order expressly states that it adjudicated the motions under the summary judgment standard. *See Estate of Bradley v. Hamilton Cty.*, No. E2014-02215-COA-R3-CV, 2015 WL 9946266, at *3 (Tenn. Ct. App. Aug. 21, 2015) (noting that although the Tennessee Supreme Court has stated that a motion to dismiss is the proper method for challenging a plaintiff's compliance with the THCLA, a motion to dismiss is converted to a motion for summary judgment where matters outside the pleadings are considered). Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion; and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. On appeal, this Court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)), *cert. denied*, 136 S. Ct. 2452, 195 L.Ed. 2d 265 (2016). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). When a moving party has filed a properly supported motion for summary judgment, the nonmoving party must respond by pointing to evidence that shows summary judgment is inappropriate. *Rye*, 477 S.W.3d at 264–65.

## ANALYSIS

We begin with the trial court's ruling regarding the statute of limitations. This health care liability action is governed by a one-year statute of limitations, which limitations period may be extended by one hundred twenty days when proper pre-suit notice is provided to the defendant health care providers. *See* Tenn. Code Ann. § 29-26-116 (providing that the statute of limitations in a health care liability action is one year from discovery of the alleged injury); Tenn. Code Ann. § 29-26-121 ("When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider."). Such pre-suit notice, however, must be sent "within the statutes of limitations and statutes of repose applicable to the provider[.]" Tenn. Code Ann. § 29-26-121(a)(3). Here, no notices were sent prior to June 5, 2015. As such, if the statute of limitations expired prior to that date, the notices were not timely and did not serve to extend the statute of

limitations.[3] Determining the date the statute of limitations began to run is therefore necessary to the resolution of this appeal.

In order to determine the date that the statute of limitations expired, we must first determine the accrual date of Appellant's cause of action. "The concept of accrual relates to the date on which the applicable statute of limitations begins to run." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012) (citing *Columbian Mut. Life Ins. Co. v. Martin*, 175 Tenn. 517, 526, 136 S.W.2d 52, 56 (1940)). While under the traditional rule, a cause of action accrues immediately upon injury, Tennessee follows the discovery rule, which provides that "'the cause of action accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury.'" *Redwing*, 363 S.W.3d at 458 (quoting *Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn. 1974)); *see also* Tenn. Code Ann. § 29-26-116 ("In the event the alleged injury [in a health care liability action] is not discovered within such one-year period, the period of limitation shall be one (1) year from the date of such discovery."). Under the discovery rule as it currently exists, the patient's cause of action accrues when the patient discovers "not only the . . . injury but also . . . the source of the injury." *Redwing*, 363 S.W.3d at 458 (citing *Sherrill v. Souder*, 325 S.W.3d 584, 595 (Tenn. 2010)); *see also* *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982) (holding that "no judicial remedy [is] available to [a] plaintiff until he [or she] discover[s], or reasonably should have discovered, (1) the occasion, the manner and means by which a breach of duty occurred that produced his [or her] injury; and (2) the identity of the defendant who breached the duty."). The discovery does not, however, "delay the accrual of a cause of action and the commencement of the statute of limitations until the plaintiff knows the full extent of the damages[.]" *Redwing*, 363 S.W.3d at 459 (citing *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 849 (Tenn. 2010)). As such, the plaintiff cannot delay filing his or her lawsuit "until all injurious effects or consequences of the actionable wrong are fully known[], []until the plaintiff knows the specific type of legal claim it has, . . . [or] until the discovery of all the facts that affect the merits of his or her claim." *Redwing*, 363 S.W.3d at 459 (internal citations omitted). The claim therefore accrues when the plaintiff has either actual knowledge of the claim or "actual knowledge of 'facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct.'" *Id.* (quoting *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995)). This type of notice is often referred to as inquiry notice and is the type of notice at issue in this case. *Redwing*, 363 S.W.3d at 459.

---

[3] Additionally, if the cause of action accrued on May 18, 2014, the claim was untimely regardless of whether proper notices were sent, as compliance with the notice requirement extends the one year statute of limitations by only one hundred twenty days, *i.e.,* to September 15, 2015, approximately twenty days prior to the filing of the complaint. *See* Tenn. Code Ann. § 29-26-121(c) (providing a one hundred twenty day extension on the statute of limitations).

Here, Appellees assert that the undisputed facts of this case establish that Decedent, as the patient, had knowledge of the alleged wrongful diagnosis by Dr. Gross on May 18, 2014, which misdiagnosis Appellant contends resulted in Decedent's death. As such, Appellees contend that Decedent was provided with sufficient facts as of May 18, 2014 to determine both the "the occasion, the manner and means by which a breach of duty occurred" and the individual who committed the breach. *See Foster* 633 S.W.2d at 305.[4] Respectfully, we cannot agree.[5]

---

[4] At oral argument, Dr. Gross raised, for the first time, an argument that the discovery rule should not apply in this case based upon the recent case of *Jones v. Behrman*, No. W2016-00643-COA-R3-CV, 2017 WL 2791172 (Tenn. Ct. App. June 27, 2017). The issue in *Jones* primarily related to fraudulent concealment. In any event, the Tennessee Supreme Court specifically determined that the discovery rule allowing a plaintiff one year from the date of discovery of his or her cause of action is applicable in health care liability actions, even where the plaintiff discovers the injury within one year of the date the negligence occurred. *See Hoffman v. Hosp. Affiliates, Inc.*, 652 S.W.2d 341, 344 (Tenn. 1983) (citing Tenn. Code Ann. § 29-26-116(a)(2)("In the event the alleged injury is not discovered within such one-year period, the period of limitation shall be one (1) year from the date of such discovery.")). This argument is unavailing.

[5] Appellant largely fails to include any argument in her initial brief to this Court regarding the accrual and expiration of the statute of limitations, choosing instead to focus on the dates and addresses of the pre-suit notices. Specifically, while Appellant asserts that the trial court erred in granting summary judgment generally and that she discovered this cause of action on the date the autopsy was released, no law is cited by Appellant to support her assertion and no analysis is devoted to this issue. Tennessee courts have held that merely constructing a skeletal argument on an issue may result in waiver on appeal. *Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010) ("[W]here a party . . . merely constructs a skeletal argument, the issue is waived."). Appellant does, however, address the accrual of the statute of limitations in her reply brief. We have recently held, however, that deficiencies in initial briefs may not be corrected in reply briefs. *Withers v. Withers*, No. W2016-01663-COA-R3-CV, 2018 WL 625119, at *2 n.2 (Tenn. Ct. App. Jan. 30, 2018). In reaching this result, we noted that to do so would be unfair because the appellee may have no opportunity to respond. *Id.* (citing *Denver Area Meat Cutters & Emp'rs Pension Plan v. Clayton*, 209 S.W.3d 584, 594 (Tenn. Ct. App. 2006) (holding that permitting an appellant to advance new arguments in a reply brief not addressed in the initial brief "would be fundamentally unfair as the appellee may not respond to a reply brief."). We have often applied this rule in cases where the issue was not raised in the initial brief and the discussion contained in the reply brief was no more than skeletal or failed to contain appropriate references to the record. *See O'dneal, et al. v. Baptist Memorial Hospital-Tipton, et al.*, No. W2016-01912-COA-R3-CV, 2018 WL 724858, at *2 n.2 (Tenn. Ct. App. Feb. 6, 2018) (holding that an issue was waived where it was mentioned for the first time in a reply brief and then only in a conclusory fashion). *Withers*, 2018 WL 625119, at *2 n.2 (holding the issue waived where it was not raised in the initial brief and the appellant failed to support the allegations in the reply brief with references to the record); *Burge v. Farmers Mut. of Tennessee*, No. M2016-016-COA-R3-CV, 2017 WL 1372864, at *9 (Tenn. Ct. App. Apr. 13, 2017) (holding that an issue was waived where it was not argued in the initial brief and the reply brief cited no authority in support of the argument); *see also Lovlace v. Copley*, 418 S.W.3d 1, 33 n.17 (Tenn. 2013) (holding that a request was waived not because it was addressed first by reply brief, but because the reply brief contained no argument or citation to the record regarding the issue); *c.f. Rountree v. Rountree*, 369 S.W.3d 122, 133 (Tenn. Ct. App. 2012) (considering issues of marital property although the required chart was included only in the appellant's reply brief). In some cases, however, we have exercised our discretion to consider arguments where the issues were fully addressed in both the brief of the appellee and the appellant's reply brief, even when the issue was completely excluded from the appellant's initial

Here, the record contains three statements of undisputed material facts filed by Appellees. The single fact contained in each statement relevant to this issue is, with minor alterations, as follows: "According to the Complaint, [Decedent] exhibited symptoms that led to his return to the emergency department at [the Hospital] on the following day, May 18, 2014. On that day, it was allegedly determined that [Decedent] was hemodynamically unstable with sepsis and cholecystitis." In support, the various statements of undisputed facts cite to Appellant's complaint, which likewise states that "it was determined" that Decedent was suffering from sepsis and cholecystitis. From our review, this fact is insufficient to show that Decedent was aware of Dr. Gross's alleged misdiagnosis on May 18, 2014 because nothing therein indicates that the diagnosis of sepsis and cholecystitis was ever actually communicated to Decedent on this date. As previously discussed, the discovery rule's cornerstone is, at minimum, the knowledge of the patient of the injury. *See Redwing*, 363 S.W.3d at 458 (focusing on the patient's knowledge of the negligence); *But see Holliman v. McGrew*, 343 S.W.3d 68, 75 (Tenn. Ct. App. 2009) (focusing, in a wrongful death action predicated on health care liability, the knowledge of the patient's heirs of the patient's injury). As such, at the very least, Defendant must point to undisputed facts showing Decedent knew or should have known that a misdiagnosis had been made the prior day, which is often met where a new diagnosis is communicated to the patient to put him or her on notice that he was previously misdiagnosed. Indeed, in cases cited involving misdiagnoses as the predicate for a health care liability action, Tennessee courts have repeatedly held that the cause of action accrued when the misdiagnosis or a new diagnosis was made known to the patient. *See, e.g., Hoffman v. Hospital Affiliates, Inc*., 652 S.W.2d 341 (Tenn. 1983) (noting that it was uncontroverted that the patient discovered her injury when a second doctor informed her that her first diagnosis was incorrect); *Young v. Kennedy*, 429 S.W.3d 536, 561 (Tenn. Ct. App. 2013) (holding that the patient's "knowledge of the infection" put the patient on notice of a physician's prior negligence); *Murphy v. Lakeside Med. Ctr., Inc.*, No. E2006-01721-COA-R3-CV, 2007 WL 906760, at *4 (Tenn. Ct. App. Mar. 26, 2007) (holding that the plaintiff was placed on notice of his injury when the patient received conflicting diagnoses regarding his hearing loss); *Jones v. Neblett*, No. CA 1306, 1989 WL 126280, at *1 (Tenn. Ct. App. Oct. 23, 1989) (holding that the plaintiff was put on notice of the injury on the date that another doctor informed the plaintiff-patient that a prior diagnosis was incorrect). While "there is no requirement of diagnosis of the actual injury by another medical professional," the record must contain evidence that the patient was put on notice that he or she was injured by the defendant's negligence. *Rogers v. Blount Mem'l Hosp., Inc.*, No. E2015-00136-COA-R3-CV, 2016 WL 787308, at *5 (Tenn. Ct. App. Feb. 29, 2016) (citing *Sherrill*, 325 S.W.3d at 595)

brief. *See Malco Theaters, Inc. v. Roberts*, No. W2010-00464-COA-R3-CV, 2011 WL 1598884, at *25 (Tenn. Ct. App. Apr. 26, 2011). Here, the question of the discovery of this cause of action was mentioned in the initial brief and fully addressed in Appellant's reply brief, which included both citations to authority and references to the record. In addition, Appellees were not deprived of the opportunity to address this issue on appeal because it was fully addressed in their brief. Because this issue was fully litigated by both parties in the trial court and on appeal, we will proceed to consider it.

- 7 -

(reversing summary judgment on the issue of the statute of limitations because the evidence did not establish that the patient had notice he had been injured by a physician until another physician informed him of the prior misdiagnosis). Here, there is nothing in the record beyond speculation to suggest that Decedent's return to the emergency room on May 18, 2014, alone, should have given Decedent any cause to suspect that he had been injured by Dr. Gross's misdiagnosis the prior day. Rather, as Appellant points out, in the absence of proof on this issue, a reasonable inference is that Decedent believed that his return to the hospital was the result of a worsening of his dehydration, as had been previously diagnosed. *See Rogers*, 2016 WL 787308, at *5 (holding that the plaintiff was not put on notice of the misdiagnosis because the worsening symptoms could reasonably have been attributed to the natural progression of the previously diagnosed ailment).

Moreover, although Appellees assume that the diagnosis of sepsis and cholecystitis was communicated to Decedent on May 18, 2014, the undisputed facts contained in the record simply do not support this assumption. The record contains no depositions or affidavits from medical professionals who treated Decedent on May 18, 2014 or from any friends or family members who may have been present at the Hospital on that date. Rather, the undisputed facts establish only that a diagnosis was made on May 18, 2014, not that this diagnosis was in any way communicated to Decedent. While the diagnosis may in fact have been communicated to Decedent on May 18, 2014, especially given Appellant's failure to specifically deny that such a communication occurred, the undisputed facts do not necessitate this conclusion and the burden therefore never shifted to Appellant to set forth specific facts to negate Appellees' assertion that notice had been provided to Decedent. To hold otherwise would be to resolve a factual inference in favor of Appellees, an action that is not permitted under our summary judgment standard. *See Luther*, 5 S.W.3d at 639 (directing courts to resolve all factual inferences in the nonmoving party's favor when considering a motion for summary judgment). Because Appellees have failed to set forth undisputed facts establishing that Decedent had sufficient facts on May 18, 2014 to put him on notice of Dr. Gross's alleged negligence, summary judgment on this basis was inappropriate. Rather, the undisputed facts in the record show only that the diagnosis was made known to Decedent or his representatives on June 18, 2014, when Appellant admits that she learned of Decedent's cause of death through the release of the autopsy report. Using this date, if Appellant gave appropriate pre-suit notice pursuant to Tennessee Code Annotated section 29-26-121, Appellant's complaint was timely filed. The trial court's judgment in this respect is therefore reversed.

## II.

Appellees next argue that even in the event that the statute of limitations did not expire on May 18, 2015, summary judgment is still appropriate because Appellant did not send timely pre-suit notice of her lawsuit to Appellees in the manner required by Tennessee Code Annotated section 29-26-121(a)(3)(B). As previously stated, to rely on

the one hundred twenty day extension to the statute of limitations, a plaintiff must give appropriate pre-suit notice under section 29-26-121. *See* Tenn. Code Ann. § 29-26-121(c) (stating that a plaintiff is entitled to an extension on the statute of limitations "[w]hen notice is given to a provider as provided in this section"). Under this statute, service of written pre-suit notice may be effectuated by

> [m]ailing of the notice:
>
>> (i) To an individual health care provider at both the address listed for the provider on the Tennessee department of health web site and the provider's current business address, if different from the address maintained by the Tennessee department of health; provided, that, if the mailings are returned undelivered from both addresses, then, within five (5) business days after receipt of the second undelivered letter, the notice shall be mailed in the specified manner to the provider's office or business address at the location where the provider last provided a medical service to the patient; or
>> (ii) To a health care provider that is a corporation or other business entity at both the address for the agent for service of process, and the provider's current business address, if different from that of the agent for service of process; provided, that, if the mailings are returned undelivered from both addresses, then, within five (5) business days after receipt of the second undelivered letter, the notice shall be mailed in the specified manner to the provider's office or business address at the location where the provider last provided a medical service to the patient.

Tenn. Code Ann. § 29-26-121(a)(3)(B). Section 29-26-121(a)(4) contains the requirements to show proof of compliance with section 29-26-121(a)(3)(B):

> Compliance with subdivision (a)(3)(B) shall be demonstrated by filing a certificate of mailing from the United States postal service stamped with the date of mailing and an affidavit of the party mailing the notice establishing that the specified notice was timely mailed by certified mail, return receipt requested. A copy of the notice sent shall be attached to the affidavit. It is not necessary that the addressee of the notice sign or return the return receipt card that accompanies a letter sent by certified mail for service to be effective.

Here, Appellees assert that Appellant failed to comply with the requirements of section 29-26-121(a)(3)(B) prior to the expiration of the statute of limitations and that the trial court properly dismissed the complaint as a result.

As an initial matter, we must first determine the level of compliance that is necessary to fulfill the requirements of these provisions. In many instances, the THCLA's pre-suit notice requirements demand strict compliance. Thus, our supreme court has stated that

> At least sixty days before filing a complaint for health care liability, a person who is asserting the claim must give written notice of the claim to each health care provider that will be named as a defendant. Tenn. Code Ann. § 29-26-121(a)(1). Pre-suit notice is mandatory, and section 29-26-121(a)(1) demands strict compliance. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 309 (Tenn. 2012); *see also Foster v. Chiles*, [467 S.W.3d 911, 916] (Tenn. Jan. 27, 2015). The consequence for failure to give pre-suit notice is dismissal of the lawsuit. *Foster*, [467 S.W.3d at 916].

*Arden v. Kozawa*, 466 S.W.3d 758, 762–64 (Tenn. 2015). In dealing with the specific provisions at issue in this case, however, the supreme court has held that strict compliance is not required:

> We hold that the manner and proof of service requirements of Tennessee Code Annotated sections 29-26-121(a)(3)(B) and (a)(4) are not mandatory, but directory, and can be achieved through substantial compliance. *Cf. Thurmond* [*v. Mid-Cumberland Infectious Disease Consultants, PLC*], 433 S.W.3d [512,] 520 [(Tenn. 2014)]; *Stevens* [*ex rel. Stevens v. Hickman Comm. Health Care Servs., Inc.*], 418 S.W.3d [547,] 555 [(Tenn. 2013)]. So long as a health care defendant is not prejudiced by a plaintiff's deviations from the statutorily prescribed method of service— "certified mail, return receipt requested"—or the proof of service requirement—"filing a certificate of mailing from the United States [P]ostal [S]ervice"—substantial compliance with these statutory requirements will suffice. *See Thurmond*, 433 S.W.3d at 518; *Stevens*, 418 S.W.3d at 555; *see also Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn.2003) (recognizing the state public policy of deciding cases on their merits as opposed to dismissing on procedural technicalities).

*Arden*, 466 S.W.3d at 764. Importantly for this case, the court further explained that the specific requirement of section 29-26-121(a)(3)(B)(i) that a notice be mailed to the health care provider's address as indicated on the Tennessee Department of Health website demands only substantial compliance. *Id.* at 764 n.6. Thus, where the plaintiff mistakenly sent the notice to an address similar to the correct address and the medical provider did not allege that he failed to receive the notice or was prejudiced by the error, substantial compliance was met. *Id.* The court explained, however, that substantial compliance will not be met where the "health care defendant claims lack of notice or prejudice[.]" *Id.* at 746.

- 10 -

Here, Appellees filed their motions to dismiss/for summary judgment on the basis that Appellant had failed to mail notices to each defendant at the addresses required by section 29-26-121(a)(3)(B). Based upon *Arden*, the proper analysis of this issue is whether Appellant substantially complied with section 29-26-121(a)(3)(B)—that is, whether either defendant was "prejudiced by a plaintiff's deviations from the statutorily prescribed method of service." *Id.* at 764.

Turning to the trial court's order, it does not appear that the trial court considered substantial compliance in ruling on this issue. The trial court's decision on this issue is as follows:

> As an additional ground for summary judgment, the [Appellees] asserted that the [Appellant] failed to properly send written notice letters to Dr. Gross and [the Hospital] pursuant to the requirements of Tenn. Code Ann. § 29-26-121(a)(3). As noted above, any notice letters mailed by [Appellant] and/or [Appellant's] counsel were mailed after the statute of limitations had already expired on May 18, 2015. Notwithstanding the foregoing, even if one assumed, arguendo, that the [Appellant's] cause of action accrued after May 18, 2014, [Appellant] and/or [Appellant's] counsel failed to properly mail notice letters to Dr. Gross and [the Hospital] pursuant to the requirements of Tenn. Code Ann. § 29-26-121(a)(3). As a result, the [Appellant] was not entitled to a one hundred twenty (120) day extension of the applicable statute of limitations pursuant to Tenn. Code Ann. § 29-26-121(c). Thus, even if one were to determine that the cause of action accrued after May 18, 2014, the filing of [Appellant's] Complaint on October 5, 2015 was untimely and the [Appellant's] claims were barred by the statute of limitations prior to the filing of [Appellant's] Complaint.

Thus, "distilled to its essence," *see* ***Beard v. Branson***, 528 S.W.3d 487, 502 (Tenn. 2017), the trial court's order contains a single conclusion relevant to our analysis on this issue: Appellant "failed to properly mail notice letters to Dr. Gross and [the Hospital] pursuant to the requirements of Tenn. Code Ann. § 29-26-121(a)(3)."

Although the trial court speaks through its written orders, rather than the transcript, *see* ***In re Adoption of E.N.R.***, 42 S.W.3d 26, 31 (Tenn. 2001), we note that the trial court's oral ruling on this issue provides no greater illumination. Rather the trial court's oral ruling on this issue is as follows:

> [Section] 29-26-121 provides that notice must be filed in a very specific manner and mailed to both addresses which were gone over in detail in argument, and I'm not going to read those here today, but I think that was

- 11 -

very clear in the argument.[6] The question is when two letters were sent. If the [Appellees'] interpretation of the statute is correct, then I believe the notice letters were still sent outside of the statute of limitations. There is a question of whether or not – I was never able to figure out from the record if --believe there was only one letter sent to [the Hospital] on behalf of -- which was I believe intended for Dr. Gross and for [the] Hospital, and the Court finds that that is not sufficient to comply with the statute.

Thus, while it does appear that the trial court ruled that section 29-26-121(a)(3)(B) required that Appellant send "two letters" to each Appellee, the oral ruling lacks specificity as to the deviations that were made with regard to both the Hospital and Dr. Gross, and again the trial court includes no discussion of prejudice.

Summary judgment is governed by Rule 56 of the Tennessee Rules of Civil Procedure. Importantly, Rule 56.04 states: "The trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling." In **Smith v. UHS of Lakeside**, 439 S.W.3d 303 (Tenn. 2014), the Tennessee Supreme Court held that Rule 56.04 requires that an order granting or denying summary judgment include a rationale for the ruling that is both adequately explained and is the product of the trial court's independent judgment. **Id.** at 314. In **Smith**, the trial court orally granted summary judgment without providing any basis for its decision, directing counsel for one party to draft the trial court's order and provide the "rationale for the [c]ourt's ruling." **Id.** at 317. The Tennessee Supreme Court held that the trial court had abrogated its "high judicial function" to provide the basis for its ruling and that the basis provided by the party-prepared order would not be imputed to the trial court. **Id.** at 317–18.  Thus, "the trial court, upon granting or denying a motion for summary judgment, [must] state the grounds for its decision before it invites or requests the prevailing party to draft a proposed order." **Id.** at 316. In reaching this result, the Tennessee Supreme Court noted that intermediate appellate courts need not adhere to a practice requiring us "to conduct archeological digs and to review summary judgment orders when the basis for the trial court's decision can be readily gleaned from the record and to remand the case only when their practiced eyes cannot discern the grounds for the trial court's decision." **Id.** at 314 (footnotes omitted). Rather, the court noted that in addition to issues of judicial economy, questions of whether we should soldier on in spite of the trial court's failure to comply with Rule 56.04 should also take into account "the fundamental importance of assuring that a trial court's decision either to grant or deny a summary judgment is adequately explained and is the product of the trial court's independent judgment." **Id.**

---

[6] The transcript contained in the record contains only the trial court's ruling, not the argument of the parties.

A review of the record reveals that neither the trial court's oral ruling nor its written order comply with the Tennessee Supreme Court's directive that the decision be "adequately explained." *Id.* First, as noted above, the Tennessee Supreme Court held that substantial compliance was the proper measure of conformity with section 29-26-121(a)(3)(B) in 2015; the trial court's ruling, issued in 2017, however, fails to mention substantial compliance.[7] In failing to apply the appropriate standard, the trial court's order also does not discuss the issue of prejudice to Appellees or whether Appellees received actual notice, the cornerstones of the substantial compliance analysis. *See Arden*, 466 S.W.3d at 764. Moreover, even though the trial court clearly found that Appellant "failed to properly mail notice letters" and that the mailing was "not sufficient[,]" the trial court's ruling does not adequately explain the specific deviations that occurred in this case with regard to each Appellee. Indeed, although the record contains two affidavits filed by Appellant's counsel detailing that various notices were mailed in this case over a multitude of dates to the two defendants at issue, the trial court's written order fails to mention even a single address, date, attempted or successful mailing, or defendant specifically. Rather, the trial court's order concludes that the notices were not sent properly with no discussion of the basis for that decision.

Furthermore, there is uncertainty surrounding the facts in the record that make us reluctant to soldier on in this case. For example, there is no dispute that the Tennessee Department of Health, at the time of the events at issue in this case, listed Dr. Gross's address as "Lawrence B. Gross, M.D., Methodist North Hospital Emerg., Memphis, Tennessee 99999." As such, section 29-26-121(a)(3)(B)(ii) states that notice should be mailed to this address along with the physician's place of business. The address listed by the Tennessee Department of Health, however, does not appear to be a valid address. Instead, it appears that Appellant attempted to send a letter on June 5, 2015 to "3960 New Covington Pike, Memphis, Tennessee 38128." Although Appellant asserts in her brief that this is "the business address" for the Hospital, there is no evidence in the record to either substantiate or refute this allegation.[8] *See Washington v. Tennessee Dept. of Corr.*, No. 01A-01-9603-CH-00131, 1996 WL 334359, at *1 (Tenn. Ct. App. June 19, 1996) ("Unsworn allegations of fact in pleading or brief do not create an issue as to facts shown by sworn evidence."); *see also Elliott v. Cobb*, 320 S.W.3d 246, 250 (Tenn. 2010)

---

[7] The trial court's failure to mention substantial compliance may be attributable to the parties, neither of whom specifically cited *Arden* in the trial court. Appellant did argue in the trial court, however, that actual notice was sufficient to meet the requirements of the statute—an argument that does not appear to have been addressed by the trial court's order, as actual notice is not mentioned. Appellant raised the same argument in her brief to this Court, specifically noting that compliance with section 29-26-121(a)(3)(B) is not mandatory. Moreover, "[i]t is the duty of this Court to apply the controlling law, for which there is a basis in the record, whether or not cited or relied upon by the parties." *Kocher v. Bearden*, No. W2016-02088-COA-R3-CV, 2017 WL 2080396, at *5 (Tenn. Ct. App. May 15, 2017) (quoting *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 658 n.1 (Tenn. 1990)).

[8] In the trial court, however, Appellant also asserted that the Hospital's "business address" was 1300 Wesley Drive, Memphis, Tennessee 38116.

- 13 -

("[S]tatements and arguments of counsel are neither evidence nor a substitute for testimony."). Questions regarding this address may require resolution to determine whether substantial compliance was met in this case, such as whether a second letter that was sent following the return of the New Covington Pike letter was within the time allowed by section 29-26-121(a)(3)(B)(ii) (allowing the plaintiff five days to send a third letter where both of the first two letters return undelivered). Indeed, the trial court's oral ruling reflects confusion regarding the timing of notices sent in this case and the intended recipients but nevertheless grants summary judgment in favor of Appellees. Summary judgment, however, is only appropriate where the undisputed facts lead to a single conclusion. *See **Jones v. Bedford Cty.***, No. M2006-02710-COA-R3-CV, 2007 WL 3202760, at *2 (Tenn. Ct. App. Oct. 31, 2007) (citing ***Pero's Steak & Spaghetti House v. Lee***, 90 S.W.3d 614, 620 (Tenn. 2002)) ("Summary judgment should be granted at the trial court level when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion, which is the party seeking the summary judgment is entitled to a judgment as a matter of law.").

Based on the foregoing, we conclude that the appropriate remedy is to vacate the judgment of the trial court on this issue and remand for further consideration in light of the appropriate standard. *See **Smith***, 439 S.W.3d at 318 (affirming the Court of Appeals' decision to vacate the decision of the trial court and remand for the entry of an order fully compliant with Rule 56.04); *see also **Hoback v. City of Chattanooga***, No. E2011-00484-COA-R3-CV, 2012 WL 2974762, at *6 (Tenn. Ct. App. July 20, 2012) (holding that the fact-finder applied an incorrect standard, vacating the judgment, and remanding to the fact-finder to apply the correct standard); ***In re Estate of Boote***, 265 S.W.3d 402, 418 (Tenn. Ct. App. 2007) (holding that the trial court applied the wrong evidentiary standard, vacating the judgment, and remanding to the trial court to apply the correct standard). On remand, Appellees are not precluded from filing another motion concerning the accrual and expiration of the statute of limitations, supported by appropriate evidence. Should the trial court again be asked to rule upon Appellant's compliance with Tennessee Code Annotated section 29-26-121(a)(3)(B), the trial court is directed to make a ruling that adequately explains its decision.

### III.

Finally, Appellees assert that this Court should dismiss Appellant's complaint because she failed to substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E) by failing to provide a HIPAA-compliant medical authorization in connection with her pre-suit notice. The trial court expressly declined to rule upon this argument. Generally, this Court does not decide issues that were not first decided by the trial court. *See **In re Adoption of E.N.R.***, 42 S.W.3d 26, 31–32 (Tenn. 2001) (holding that courts "are limited in authority to the adjudication of issues that are presented and decided in the trial courts"); ***Dorrier v. Dark***, 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of

- 14 -

issues that are presented and decided in the trial courts . . . ."); ***Hayes v. City of Memphis***, No. W2014-01962-COA-R3-CV, 2015 WL 5000729, at \*10 (Tenn. Ct. App. Aug. 21, 2015) (citing ***Copper Basin Fed. Credit Union v. Fiserv Sols., Inc.***, No. E2012-02145-COA-R3-CV, 2013 WL 3421916, at \*5 (Tenn. Ct. App. July 3, 2013)) ("Even though this issue was raised at the trial court level, we cannot fully analyze this issue because the trial court did not consider or rule on it."). As such, we decline to address this issue.

## CONCLUSION

The judgment of the Shelby County Circuit Court is reversed in part, vacated in part, and remanded for further proceedings consistent with the Opinion. Costs of this appeal are taxed to Appellees Methodist Healthcare-Memphis Hospitals and Lawrence B. Gross, M.D., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE